SEEGERS et al., d/b/a SEEGERS BROTHERS EXCAVATING, Respondents, v. SPRAGUE, Appellant.

*No. 514 (1974). Submitted under sec. (Rule) 251.54 October 30, 1975.—Decided November 25, 1975.*
(Also reported in 236 N. W. 2d 227.)

For the appellant the cause was submitted on the brief of *Herbert L. Usow, S. C.* of Milwaukee.

For the respondents the cause was submitted on the brief of *John P. Buckley* of Waukesha.

HANLEY, J. The sole issue on this appeal is whether the contractor here may recover the value of goods and services rendered to a general contractor property owner.

The key paragraph in Seegers' complaint was:

"That on or about the 13th day of October, 1970 at the special instance and the request of the defendant, plaintiffs agreed to furnish certain materials and labor to wit: . . ."

With a further allegation that the agreed labor and materials necessary for septic systems were furnished, demand was made for their value.

The trial court adopted the allegations of the complaint as its findings of fact. Implicit in Sprague's argument on appeal, however, is the contention that the Seegers were always subcontractors of Keller and were without privity to Sprague, contrary to the conclusion accepted by the court.

Defendant Sprague places heavy reliance on *Utschig v. McClone* (1962), 16 Wis. 2d 506, 114 N. W. 2d 854,

for the proposition that a subcontractor cannot obtain direct relief against a property owner without an express contract. *Utschig* acknowledged that the subcontractor may avail himself of a construction lien, but his primary remedy was to proceed against the main contractor who employed him. No attempt was made to prove an express contract between Sprague and the Seegers. The lien remedy has been terminated. Further, contractor Keller is "among the missing." This was brought out through the testimony of Sprague. Apparently some dispute over Keller's workmanship had arisen and he had commenced suit. Sprague counterclaimed, seemingly for the costs of defective work. The absence of Keller had suspended that action. Sprague claimed, however, to have paid Keller for the septic systems.

The latter testimony is argued as defeating the Seegers' claim which is denominated by Sprague as "unjust enrichment." *Utschig* had contained language that an owner is not liable on an implied contract simply because he received subcontractors' service, *id.* at 506, but did not state that such theory would be unsuccessful under all circumstances. After losing at the demurrer stage, the plaintiff in *Utschig* argued that he had rendered extra services at the instance of the owner, but the lack of allegations on this privity contact in his complaint made this claim against demurrer unavailing.

In *Superior Plumbing Co. v. Tefs* (1965), 27 Wis. 2d 434, 134 N. W. 2d 430, an implied contract theory was also argued. The plaintiff corporation was a subcontractor and the defendant owner knew of this status and knew that he had received materials and services from it. Suit was commenced on the basis of unjust enrichment. Because the complaint as drafted admitted the possibility that the general contractor had been paid but had not in turn disbursed to the subcontractor, this court reversed an order overruling the demurrer. Un-

derlying this approval of the demurrer was the belief that an owner was not unjustly enriched when he had paid the general contractor for all the work done.

Respondents claim to avoid this line of cases restricting unjust enrichment by denying that this theory was involved. They reiterate that the action is on *quantum meruit*. They also deny that the evidence establishes that they were subcontractors. Rather than argue that they were contractors with the owner, though, they concisely repeat the findings of fact of the court which merely repeated the allegations of their complaint.

In an oral decision after the trial, the court stated:

"Well, there is conflicting testimony in the matter concerning Mr. Sprague's contact with one or both of the Seegers Brothers prior to commencement. . . . Eugene Seegers testified that he saw Mr. Sprague on the job and discussed with him the change in the size of the tanks. . . . It would lead the court to believe that Mr. Sprague was aware that some person other than Mr. Keller, the plumber, was installing the septic system.

". . .

". . . [T]he court is satisfied that the plaintiffs have established the installation of the septic system . . . that Mr. Sprague was aware of the installation and is responsible for payment of the cost of the installation of the septic system."

Awareness of the subcontractor and his work does not establish unjust enrichment, but is an essential element of recovery. *Superior Plumbing, supra,* at 435, 437. The above-quoted language, read in connection with the findings, indicates that the court found some privity contact but did not find that Seegers were "in the position of contractors with Donald Sprague" as the respondents would hope.

The trial court's conclusion is inevitable from the testimony adduced. Although Sprague was acting as

owner-contractor, neither he nor the Seegers were acquainted with one another. Sprague testified that the plumbing and septic system were contracted to Keller, who in turn sought out the Seegers. The fact that Sprague approved the use of the necessary larger tanks and inquired if the Seegers would be doing both properties hardly negates their subcontractor status. Any contact at all between the subcontractor and owner, on this theory, would establish a contract or implied contract relationship. The testimony of Sprague refutes the conclusion that the Seegers were contractors with him. At best there were certain contacts, as generally indicated by the court.

*Quantum meruit* was allowed despite the testimony of payment to Keller. The respondent apparently feels that this factor, which prevented an award under similar facts on a theory denominated as unjust enrichment, does not apply to his action. This contention is erroneous.

In reviewing the English law of implied in law contracts or quasi-contract, one treatise noted that the current basis for *indebitatus assumpsit, quantum meruit* and *quantum valebat* could be summarized by one theory:

"Quasi-contractual claims are, therefore, those which fall within the scope of the actions for money had and received or for money paid, or of *quantum meruit* or *quantum valebat* claims, and which are founded upon the principle of unjust enrichment. There are, however, other claims of different origin which are also founded on that principle." Goff & Jones, *Law of Restitution* (1966), 4.

American cases also recognize this relationship:

"A prominent characteristic of the concept of quantum meruit is as a device for the prevention of unjust enrichment of one party at the expense of another." *Matter of Taylor* (1954), 206 Misc. 69, 72, 132 N. Y.

Supp. 2d 686. *See also: Ylijarvi v. Brockphaler* (1942), 213 Minn. 385, 7 N. W. 2d 314, 319. *Dunn v. Phoenix Village, Inc.* (D. C. Ark. 1963), 213 Fed. Supp. 936, 951, 952.

The full spectrum of quasi-contract law, specifically including *quantum meruit,* has apparently been long recognized by one state as grounded in the doctrine of unjust enrichment. *Brown v. Thornton* (1967), 150 Mont. 150, 432 Pac. 2d 386, 390, and cases cited therein.

This interrelationship in restitution theory has not gone unrecognized in Wisconsin. By implication in *Superior Plumbing, supra,* and definitely in *Gebhardt Bros., Inc. v. Brimmel* (1966), 31 Wis. 2d 581, 143 N. W. 2d 479, this court recognized that subcontractors may have a basis for recovery in the quasi-contract action of unjust enrichment. In *Don Ganser & Associates, Inc. v. MHI, Inc.* (1966), 31 Wis. 2d 212, 216, 217, 142 N. W. 2d 781, the elements of such action were listed as:

". . . (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof."

The operative facts in these cases were the same as presented here, of recovery for goods and services benefiting the property owner. Respondent's desire to call their action *quantum meruit* and to frame their complaint in terms of language from cases following that theory by name, *see Estate of Voss* (1963), 20 Wis. 2d 238, 241, 121 N. W. 2d 744, does not avoid the clear decisional law that regards unjust enrichment as an element necessary for recovery in these circumstances. *See also: Paschall's, Inc. v. Dozier* (1966), 219 Tenn. 45, 407 S. W. 2d 150; *Guldberg v. Greenfield* (1966), 259 Iowa 873, 146 N. W. 2d 298.

As in *Utschig,* there is also a lack of proof that an *independent* request or invitation for their services was made by Sprague. *Quantum meruit* as a measure of recovery for an implied in fact contract would demand as much. An owner is not liable on a contract implied by the facts simply because he has received goods or services or knows that services have been rendered. *Gebhardt, supra,* at 585. The respondents' complaint and arguments on appeal indicate that they sought to establish an implied promise to pay them directly for the reasonable value of their services, a *quantum meruit* measure. If the trial court did intend this proposition by its ruling, such a holding would be contrary to the great weight and clear preponderance of the evidence.

The respondents' right to recover here rested on the theory denominated in past construction cases as unjust enrichment. On the basis of *Superior Plumbing, supra,* no unjust enrichment has occurred here. Payments by Sprague to Keller to cover his work and the work of his subcontractors have not left Sprague enriched. The absence of payment to Seegers is due to Keller's actions.

Although Sprague was also a general contractor as well as owner, this status does not add distinguishment that makes the *Superior Plumbing* rationale inapplicable. The claimant there was a subcontractor once removed from the defendant, as are the Seegers here.

Under the circumstances of this case we conclude that it is inequitable to compel the owner to pay the Seegers after payment had been made to Keller. The owner had a right to rely upon his agreement with Keller. There was also no implied agreement to compensate the Seegers brothers.

*By the Court.*—Judgment reversed.