**GREEN QUARRIES, INC., Appellant,**

v.

**Ernie W. RAASCH and Emelia F. Raasch, Respondents.**

No. WD 33356.

Missouri Court of Appeals, Western District.

July 31, 1984.

Kenneth J. Berra, Richmond, for appellant.

P. Wayne Kuhlman, Liberty, for respondents.

Before TURNAGE, C.J., SOMERVILLE, P.J., and CLARK, MANFORD, KENNEDY, NUGENT and LOWENSTEIN, JJ.

NUGENT, Judge.

Plaintiff Green Quarries, Inc., a subcontractor, filed its third amended petition, a petition in quantum meruit, attempting to enforce a mechanic's lien on real property owned by defendants Ernie and Emelia Raasch under a theory of unjust enrichment. The trial court granted the defendant owners' motion to dismiss for failure to state a claim upon which relief could be

granted, and the plaintiff subcontractor appeals this dismissal. We affirm.

■■■ The scope of review for a motion to dismiss requires an examination of the pleadings, allowing them their broadest intendment, treating all facts alleged as true, construing the allegations favorably to plaintiff, and determining whether upon that basis the petition invokes principles of substantive law. *Shapiro v. Columbia Union National Bank and Trust Co.*, 576 S.W.2d 310, 312 (Mo.1978) (en banc). Thus, a pleading will not be adjudged insufficient if the allegations of the petition, accorded a reasonable and fair intendment, state a claim which can call for the invocation of principles of substantive law which may entitle the plaintiff to relief. *Porter v. Crawford & Co.*, 611 S.W.2d 265, 266 (Mo. App.1980). But a motion to dismiss on the ground that the petition fails to state a cause of action is well taken where the petition wholly fails to state a cause of action, that is, where the facts essential to a recovery are not pleaded. *See Smith v. St. Louis County Softball Assoc.*, 623 S.W.2d 38 (Mo.App.1981); *Fischer v. Vonck*, 614 S.W.2d 26 (Mo.App.1981); *J. Louis Crum Corp. v. Alfred Lindgren, Inc.*, 564 S.W.2d 544 (Mo.App.1978).

In substance, plaintiff's petition appears to allege the following:

Defendants, owners of certain real estate in Carrol County, entered into an agreement with the general contractor, Anchor Company, for improving the real estate. Plaintiff Green Quarries, as Anchor's subcontractor, sold rock and concrete to the general contractor on defendants' project and delivered those materials to the project for use in improvement of defendants' property. After delivery in January, 1980, Green Quarries unsuccessfully sought payment from Anchor. On May 13, 1980, Anchor filed for bankruptcy and Green Quarries filed a proof of claim against the general contractor in the bankruptcy action. On May 20, Green Quarries filed a lien in the circuit court of Carrol County on the real estate and improvements on defendants' property. Anchor was adjudged bankrupt, and its account due Green Quarries remains owing and unpaid. Green Quarries then demanded payment of the defendants on the account owed Green Quarries by the general contractor. The defendants did not pay Green Quarries.

Plaintiff Green Quarries informs us in its brief that its original petition and its first amended petition attempted to enforce the mechanic's lien which had been filed by plaintiff. The trial court dismissed the petition, but granted plaintiff an opportunity to amend. (We have no record, however, as to why those petitions did not state a claim.) Plaintiff then filed a second amended petition attempting to enforce the mechanic's lien. Defendants moved to dismiss the second amended petition for failure to state a claim, alleging that plaintiff's original mechanic's lien was improperly filed. The trial court heard and overruled plaintiff's motion to establish a lost document, and by agreement of the parties allowed plaintiff to file a third amended petition.

The theory of plaintiff's third amended petition was that the owners had been unjustly enriched. Paragraph eleven of the petition reads as follows:

That as a result of the failure of Anchor Company and Respondents to pay said account, Respondents have been unjustly enriched in that as a result of Petitioner's delivery of rock and concrete to Respondents heretofore described real estate for use in and which was used in the improvements of the heretofore described land, Respondents have enriched and improved the heretofore described land to the detriment of Petitioner.

The landowner defendants moved to dismiss the third amended petition for failure to state a claim or cause of action. Rule 55.27(a)(6), Missouri Rules of Civil Procedure. The trial court sustained the motion.

The defendant owners contend that the petition does not state facts sufficient to state a claim. Plaintiff subcontractor does not contend that the petition states facts sufficient to state a claim based either on an express or implied-in-fact contract be-

tween it and the defendant owners. Rather, the thrust of plaintiff's argument on appeal is that its petition pleaded facts essential to a recovery in quantum meruit under the doctrine of quasi-contract.

The doctrine of quasi-contract, also known as a contract implied in law, is based primarily on the principle of unjust enrichment. *Donovan v. Kansas City*, 352 Mo. 430, 175 S.W.2d 874, 884 (Mo.1943) (en banc); *Dewey v. American Stair Glide Corp.*, 557 S.W.2d 643, 649 (Mo.App.1977); *Rackers and Baclesse, Inc. v. Kinstler*, 497 S.W.2d 549, 554 (Mo.App.1973); *Rolla Lumber Co. v. Evans*, 482 S.W.2d 519, 522 (Mo.App.1972); *Annot.*, 62 A.L.R.3d 288, 292 (1975). Unlike a contract implied in fact, a contract implied in law is imposed, or created, without regard to the promise of the party to be bound. *Dewey v. American Stair Glide, Corp., supra*, at 649; *Rackers and Baclesse, Inc. v. Kinstler, supra*, at 554; *Bennett v. Adams*, 362 S.W.2d 277, 280–81 (Mo.App.1962); *Annot., supra*, at 293. The duty which engenders a quasi-contractual obligation is most often based upon the principle of unjust enrichment. *Rackers and Baclesse, Inc. v. Kinstler, supra*, at 554; *Annot., supra*, at 293. Unjust enrichment occurs where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust. *Annot., supra*, at 293; *see also Dewey v. American Stair Glide Corp., supra*, at 649; *Rolla Lumber Co. v. Evans, supra*, at 522. Thus, quantum meruit is a remedy for the enforcement of a quasi-contractual obligation. *Laughlin v. Boatmen's Nat. Bank of St. Louis*, 354 Mo. 467, 189 S.W.2d 974, 979 (1945); *Rolla Lumber Co. v. Evans, supra*, at 522.

Courts generally recognize that the essential elements of quasi-contract or contract implied in law are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable. *Annot., supra*, at 288. The most significant requirement is that the enrichment to the defendant be unjust, *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154; *Rolla Lumber Co. v. Evans, supra*, at 522, that retention of the benefit be inequitable, *Donovan v. Kansas City, supra*, at 884; *Rackers and Baclesse, Inc. v. Kinstler, supra*, at 554.

In resolving the issue whether a landowner has been unjustly enriched by a subcontractor's improvements on the owner's real estate, the courts have repeatedly looked to whether the landowner has already paid the general contractor the amount due the general contractor under their express contract. *Seegers v. Sprague*, 70 Wis.2d 997, 236 N.W.2d 227, 231 (1975); *Guldberg v. Greenfield*, 259 Iowa 873, 146 N.W.2d 298, 305 (1966); *Superior Plumbing Co., Inc. v. Tefs*, 27 Wis.2d 434, 134 N.W.2d 430 (1965); *Cohen v. Delmar Drive-In Theatre, Inc.*, 46 Del. 427, 84 A.2d 597, 598 (1951); *Rackers and Baclesse, Inc. v. Kinstler, supra*, at 554; *Costanzo v. Stewart*, 9 Ariz.App. 430, 453 P.2d 526, 527 (1969); *Rogers v. Whitson*, 228 Cal.App.2d 662, 39 Cal.Rptr. 849, 857 (1964). If the owner has indeed paid the general contractor for the materials, the owner's retention of them without further payment has been found not to constitute unjust enrichment. *Seegers v. Sprague, supra; Guldberg v. Greenfield, supra; Superior Plumbing Co., Inc. v. Tefs, supra; Cohen v. Delmar Drive-In Theatre, Inc., supra; Rackers and Baclesse, Inc. v. Kinstler, supra;* and *Rogers v. Whitson, supra*. Although the subcontractor may remain unpaid and thus suffer detriment, equity will not require the owner to pay twice. *Superior Plumbing Co., Inc. v. Tefs, supra*, at 433; *see also Rackers & Baclesse, Inc. v. Kinstler, supra*, at 554.

In *Superior Plumbing Co. v. Tefs, supra*, plaintiff subcontractor furnished materials and services on realty owned by the defendant. The plaintiff subcontractor brought suit against the defendant owner on an implied contract theory. As in this case, the plaintiff alleged that he had not

been paid. The appellate court, however, reversed the trial court's order denying defendant's motion to dismiss. The complaint did not contain an affirmative averment that the defendant owner had not paid the general contractor. Therefore, the court found that the complaint allowed for the inference that the owner had indeed paid the general contractor for the benefit conferred. Thus, the court concluded that the complaint did not set forth facts sufficient to constitute a cause of action for unjust enrichment. *Id.* at 432.

■ Green Quarries contends on appeal that it was not required to plead or prove that the defendant owners never paid the general contractor. Plaintiff argues that payment is an affirmative defense to be pleaded and proved by the defendant owners. In a claim based on unjust enrichment, plaintiff's contention cannot be correct. Payment or non-payment by the owner is a factor which determines whether the petition alleges the most important element for a recovery based on quasi-contract—unjust enrichment. *Superior Plumbing Co., Inc. v. Tefs, supra; see Rackers and Baclesse, Inc. v. Kinstler, supra,* at 554.

■ Although plaintiff does not contend that it was required to allege, or that it did allege, non-payment by the owners to the general contractor, we nonetheless examine the petition and construe it most favorably to the plaintiff in order to determine whether it states facts sufficient to constitute a claim based on unjust enrichment. Non-payment by the owner to the general contractor must be pleaded by the subcontractor in order to state a claim based on unjust enrichment. *Superior Plumbing Co., Inc. v. Tefs, supra; see also Rogers v. Whitson, supra; Pay-N-Taket, Inc. v. Crooks,* 259 Iowa 719, 145 N.W.2d 621 (1966). Thus, plaintiff's petition must allege that the defendants did not pay Anchor. Because of the facts of the case at bar, however, plaintiff must also plead that the Raaschs have not made payment to the trustee in bankruptcy. Plaintiff alleges in its petition that Anchor filed for bankruptcy in May of 1980 and that in December of

1980, Anchor was adjudicated bankrupt. Thus, in order to constitute a claim for unjust enrichment, plaintiff must here allege that neither the trustee in bankruptcy nor the general contractor has been paid by the defendants.

In order to determine whether plaintiff's petition contains these required allegations, we examine the following pertinent paragraphs of the petition:

. . . .

4. That while being the owners of said tract of land, Respondents . . . entered into a contract with Anchor Company . . . for the improvements of the . . . land.

5. That in pursuance of said contract, Petitioner . . . sold to . . . Anchor Company, and delivered to Respondents heretofore described real estate, rock and concrete . . . for use in . . . the improvement of the . . . land . . . .

6. That . . . Petitioner demanded of Anchor Company payment of said account

. . . .

. . . .

9. That [thereafter] Anchor Company was adjudged bankrupt . . . and the account referred to in Paragraph Numbered Six (6) remains due, owing and unpaid. . . .

10. That as a result . . . Petitioner demanded of Respondents payment of said account . . . and that said account to date, remained due, owing and unpaid.

11. That as a result of the failure of Anchor Company and Respondents to pay said account, Respondents have been unjustly enriched in that as a result of Petitioner's delivery of rock and concrete to Respondents . . . real estate . . . which was used in the improvements of the . . . land, Respondents have enriched and improved the land . . . to the detriment of Petitioner.

Attached to the petition is the itemized statement and account. "Green Quarries, Inc." is printed on the top of the exhibit and "Anchor Company" listed as the "account name." The exhibit indicates that

Anchor owes Green Quarries a total of $8,174.10.

Plaintiff's petition fails to state a claim based on unjust enrichment because it fails to allege that the owners have not paid Anchor and the trustee in bankruptcy. The averment in paragraph eleven of the petition "that as a result of the failure of Anchor Company and Respondents to pay said account," alleges only that Green Quarries' account due from Anchor has not been paid by either Anchor or the defendants because "said account" refers only to Anchor's account with Green Quarries. Paragraphs 5, 6 and exhibit A, all indicate that the account which has not been paid is the debt of Anchor to Green Quarries. Thus, paragraph eleven does not allege that defendants have not paid the amount which the defendant owners owed the general contractor. For the same reasons, plaintiff's averments in paragraph nine cannot be deemed to allege that the defendants have not paid the trustee in bankruptcy.

■ Such allegations are required because if proof of only the facts alleged in the petition warranted a recovery, the defendant owners could be required to pay twice for the same benefit. Therefore, giving the complaint the liberal construction to which it is entitled, we conclude that it does not set forth facts sufficient to constitute a claim for relief in quantum meruit based on quasi-contract because it omits an essential element of unjust enrichment.

Even if we adopted the more liberal construction and found the petition sufficient, however, we should still be required to hold that the trial court properly dismissed plaintiff's petition for failure to state a claim.

No Missouri court has yet addressed the issue of whether a subcontractor may obtain restitution in the form of a personal judgment upon a quasi-contract theory against a landowner whose property has been improved by the subcontractor's performance where the general contractor has failed to pay the sub pursuant to their contract. *Cf. Rolla Lumber Company v.*

*Evans,* 482 S.W.2d 519 (Mo.App.1972) (recovery denied where plaintiff general contractor had contracted with tenants to make improvements on rental property and later sought payment based on a quasi-contractual theory from defendant landowners). The overwhelming majority of courts which have confronted this issue have denied quasi-contractual relief. 2 G. Palmer, *The Law of Restitution* § 10.7, at 423 (1978). In fact, we have found only one case where a court allowed a subcontractor to obtain a personal judgment based on a quasi-contractual theory against a landowner whose property the sub had improved. *Costanzo v. Stewart,* 9 Ariz.App. 430, 453 P.2d 526 (1969). The Arizona court pointed out, however, factors which would be considered in an implied-in-fact rather than implied-in-law contract case. In allowing "quasi-contractual recovery," the court emphasized that the trial court had found that the defendant knew that the plaintiff was concerned about payment and that the defendant assured the plaintiff that escrow arrangements had been made. *Costanzo v. Stewart, supra.*

■ Numerous reasons have been given by the courts for refusing to allow a subcontractor to recover from a homeowner in quasi-contract. Insufficiency of the evidence to establish any unjust enrichment of the landowner at the subcontractor's expense and failure of the subcontractor to have availed himself of his other remedies are two of the more frequently given reasons for denying such recovery. *See* 62 A.L.R.3d 288, 295 (1975). Thus, courts have not allowed a subcontractor to recover in quasi-contract from a landowner where the landowner has already paid the general contractor, *Rogers v. Whitson,* 228 Cal.App.2d 662, 39 Cal.Rptr. 849 (1964); *Cohen v. Delmar Drive-In Theatre, Inc.,* 46 Del. 427, 84 A.2d 597 (1951); *Guldberg v. Greenfield,* 259 Iowa 873, 146 N.W.2d 298 (1966); *Seegers v. Sprague,* 70 Wis.2d 997, 236 N.W.2d 227 (Wis.1975); or where the landowner has an obligation to do so. *Gebhardt Bros., Inc. v. Brimmel,* 31 Wis.2d 581, 585, 143 N.W.2d 479 (1966).

Nor have courts allowed quasi-contractual recovery where the subcontractor has a statutory remedy available, that is, a mechanic's lien, but has cut himself off from said remedy due to his own delay or omission. *Rogers v. Whitson, supra; Vanderlaan v. Berry Construction Co.*, 119 Ill. App.2d 142, 255 N.E.2d 615 (1970); *Guldberg v. Greenfield, supra; Pay-N-Taket, Inc. v. Crooks*, 259 Iowa 719, 145 N.W.2d 621 (1966); *Johnson & Peterson, Inc. v. Toohey*, 285 Minn. 181, 172 N.W.2d 326 (1969); *George M. Morris Construction Co. v. Four Seasons Motor Inn, Inc.*, 90 N.M. 654, 567 P.2d 965 (1977); *Berger Engineering Co. v. Village Casuals, Inc.*, 576 S.W.2d 649 (Tex.Civ.App.1978); *Gebhardt Bros., Inc. v. Brimmel, supra; Utschig v. McClone*, 16 Wis.2d 506, 114 N.W.2d 854 (1962). We agree with those courts that have held that quasi-contractual recovery should not be available where the homeowner has already paid the general contractor. In such a case, no basis appears for a quasi-contractual recovery because the owner has not been unjustly enriched. We also agree with those courts which have denied recovery because the subcontractor failed to perfect his mechanic's lien. The statutory remedy available to a sub provides for the imposition of a lien on the asset improved. Restitution ordinarily leads to a money judgment imposing a personal liability on the owner instead of a mechanic's lien on the asset improved. Therefore, we will not allow quasi-contractual recovery where the subcontractor could have availed himself of the statutory remedy but did not.

■ Moreover, where, as here, the general contractor is threatening bankruptcy or has been adjudicated bankrupt, we find particular merit to the objection based on the likelihood of disadvantage to the general contractor's other creditors. To allow a subcontractor who has failed to perfect his lien to achieve preference through the indirect route of recovery from the homeowner is simply inequitable and would provide for another kind of unjust enrichment, in that case the enrichment of the subcontractor at the expense of other creditors. Although

we have found no judicial opinion citing preference by an indirect route as a reason for not permitting a subcontractor's recovery in quasi-contract, one commentator finds this to be one of the few valid reasons for rejecting such claims. *See* Dawson, *The Self-Serving Intermeddler*, 87 A Harv.L.Rev. 1409, 1444–58. There at 1447 the author summarizes this argument as follows:

> One could imagine an objection of ... substance to the shortcut sought by the sub—the likelihood of disadvantage to the general's other creditors. For the motive in seeking recourse against the owner will usually be the general's actual or threatened default. If he does default and his financial state is precarious, as it is likely to be, any sum still due from the owner will be an asset subject to the claims of his creditors, one of whom is this particular sub. If the interests were previously close to equipoise, with no sufficient reason to disturb them, the scales tip against the sub's surrogate claim where it appears that the effect would be to achieve a preference by this indirect route. *Id.* at 1447.

For the foregoing reasons, we hold that Missouri does not allow a subcontractor to obtain restitution in the form of a personal judgment upon a quasi-contractual theory against a landowner whose property has been improved by the sub's performance where the general contractor has failed to pay the subcontractor. For this additional reason, plaintiff's cause of action was properly dismissed.

Accordingly, we affirm the judgment of the trial court.

SOMERVILLE and TURNAGE, JJ., concur with majority opinion.

CLARK, J., concur with majority opinion in separate opinion filed.

LOWENSTEIN, J., dissents.

KENNEDY and MANFORD, JJ., concur with dissenting opinion filed.

CLARK, Judge, concurring in result.

I concur in the majority opinion to the extent that opinion holds appellant's petition subject to dismissal for failure to allege the elements of a claim qualified for recovery under the doctrine of quantum meruit. I do not agree that appellant should be denied recovery in all circumstances merely because it had available but failed to perfect a mechanic's lien.

As to the equitable ground for recovery ostensibly relied on by appellant in its petition below, the petition allegations, set out in the majority opinion, are fogged by uncertainty as to how it is claimed respondent property owners were unjustly enriched by such work and material as was supplied by the defaulting and now bankrupt contractor, Anchor Company. The petition lacks allegations negating the possibility that respondents, too, may have suffered loss at the hand of Anchor. Obviously, if respondents' paid Anchor and on that account refused to pay a second time to appellant, they were not unjustly enriched.

Doubt on this aspect of the pleading was resolved at oral argument when counsel for appellant disclaimed any obligation to allege or prove non-payment by respondent to Anchor of the material bill which appellant now seeks to collect from respondents. The authorities cited in the majority opinion fully confirm that the equitable claim appellant asserts includes as an element for recovery the allegation and proof of non-payment which appellant has expressly disavowed.

The case is susceptible of disposition on the failure of appellant to plead a cause of action, as the primary portion of the majority opinion rules. Consideration of whether, under any facts, a sub-contractor may proceed in equity against a property owner, is unnecessary to disposition of this case and, in my view, should be reserved for opinion in a case which adequately poses the problem of a lien opportunity lost and a property owner unjustly enriched at the expense of a laborer or materialman.

LOWENSTEIN, Judge, dissenting.

I dissent. The majority first holds the plaintiff's last petition was improperly drafted in that it left out a vital element of its case, and, secondly, that there is no cause of action in Missouri by a sub-contractor who fails to perfect his mechanic's lien against a landowner. I respectfully disagree with both holdings and address the latter first.

### I.

The majority would penalize a sub-contractor who has failed to perfect a mechanic's lien by foreclosing his right to quasi-contractual relief. No other class of persons or entities is denied equitable relief for such a failure. The result here seems unfair and unduly harsh *i.e.* denying equitable relief for failure to follow the lien statutes. The very nature of equitable relief is bottomed on the claimant having failed to protect himself in some particular way. Quasi-contractual relief is available when the recipient of the benefit should have known the provider expected to be paid. *State ex rel. Danforth v. K.C. Firefighters,* 585 S.W.2d 94, 97 (Mo.App.1979).

In this case payment by the landowners to the general contractor or its trustee in bankruptcy "pays all bets." Payment would destroy any basis for a suit in equity by the sub-contractor against the landowners. The simple matter here is, on this record, no one knows whether the landowners have paid for the rock they received. All the concerns raised by the majority as to double payment and impingement upon the bankruptcy laws are valid. Allowing this suit to determine whether the landowner got something for nothing, however, does not raise those concerns.

Contrary to what the majority opinion would predict, allowing the sub-contractor to pursue his quasi-contract petition will not lead to sub-contractors eschewing perfecting their mechanics' liens in favor of a personal judgment against the unknown solvency of the landowner. Only the truly reckless would deliberately forsake the priority afforded a mechanic's lien to risk

standing in line with a judgment in hand behind a host of other creditors. The majority opinion permits the fortuitous bankruptcy of the general contractor to inure to the benefit of the landowner for all items he had not paid the general. Simply, the landowner is allowed to be unjustly enriched.

The majority would make the mechanic's lien the exclusive remedy for a sub-contractor. Failure to obtain the lien prevents any other recourse. A mechanic's lien was unknown at common law or in equity. *Doellner v. Rogers*, 16 Mo. 340 (1852). These liens are creatures of statute. *Ward v. Nolde*, 259 Mo. 285, 168 S.W. 596 (1914). Although the general rule is that statutes in derogation of common law are to be strictly construed, mechanic lien statutes are remedial in nature and should be liberally construed to preserve the benefits intended. Although lien laws are for protection and security of suppliers, nothing in the Missouri statutory scheme makes the procurement of a lien the *exclusive* remedy available to a material supplier.

As noted in the majority there are several primary reasons given by courts in not recognizing a sub-contractor's action against the property owner. The first, the insufficiency of the *evidence* to show unjust enrichment, simply does not apply to the dismissal of a petition. There can be no proof if the case is thrown out of court, and as will be discussed *infra*, if the case is allowed to proceed and the owner proves payment the matter is closed. The sub-contractor's case would then fail since the owner's payment for the materials precludes unjust enrichment.

The second reason, the failure of the sub-contractor to avail himself of the mechanic's lien laws, is more troublesome. Two alternate theories have been used to support this reason. The first theory, inapplicable to Missouri law, is used where the statute itself specifically makes the lien the only form of recovery and expressly precludes any other type of suit. Where the statutes are silent, as in Missouri, the second theory argues that the passage by legislatures of mechanic's lien laws, since unavailable at common law, serves to erase common law actions. The fact that a statute stands in derogation of the common law, however, is normally used by courts as a rule favoring narrow statutory interpretation and not as an erasure of other available remedies. Here the competing rule of statutory construction that remedial statutes are to be liberally construed applies with equal force and weakens the argument that the lien laws were intended to wipe out all other available remedies.

None of the reasons provided should apply to this case in its present posture. For the limited purpose of preventing unjust enrichment this plaintiff should be allowed to proceed. The fact of the bankruptcy of the general contractor has no bearing on the issue of whether a sub-contractor may sue in quantum meruit. Irrelevant is the fear of scholars that unfair preferences will result. Even if relevant, their arguments are fallacious. While the sub-contractor's position may be improved as against the landowner who has been unjustly enriched because of non-payment, the sub-contractor cannot improve his position to the detriment of other creditors resulting in a bankruptcy "preference." If payment has been made, no preference results because the sub-contractor cannot recover against the landowner. If no payment has been made, the competing positions of other creditors pursuing the general in bankruptcy court is not affected, and likewise, no preference results. The bankruptcy of the general contractor should not, alone, give a landowner who contracted with him a windfall.

The cases from other states provided by the majority really stand for the doctrine that there can be no personal judgment against an owner by a sub-contractor because no privity exists between the parties. *Utschig v. McClone*, 16 Wis.2d 506, 114 N.W.2d 854 (1962); *Rogers v. Whitson*, 228 Cal.App.2d 662, 39 Cal.Rptr. 849 (1964); *Johnson & Peterson, Inc. v. Toohey*, 285 Minn. 181, 172 N.W.2d 326 (1969). In *Gebhardt Bros. Inc. v. Brimmel*, 31 Wis.2d

581, 143 N.W.2d 479, 481 (1966) the court said there could be no implied contract between the supplier and landowner so long as there existed a contract between the supplier and the general contractor.

Nothing in Missouri case law negates a claim of implied contract based upon lack of privity. The theory here was in quantum meruit for the reasonable value of rock supplied. As stated in *Berra v. Bieg Plumbing Co., Inc.*, 584 S.W.2d 116, 118 (Mo.App.1979); the sole elements for quantum meruit are:

> To recover in quantum meruit, a plaintiff must plead and prove that it provided to defendant materials or services at the request or with the acquiescence of defendant, that those materials or services had a certain reasonable value, and that defendant, despite demands of plaintiff, has failed and refused to pay the reasonable value of those materials and labor.

Privity of contract is not required in an action for money had and received. The law implies privity in such cases where the defendant has obtained money or its equivalent from the plaintiff under such circumstances that in equity and good conscience he should repay the plaintiff. *Lively v. Ridgewood Construction Corporation*, 371 S.W.2d 659, 661 (Mo.App.1963). Since privity is not an element of an implied contract, injecting this as an element in cases involving construction work can only rest upon the rationale behind the statutory lien laws. Some courts hold either expressly or by implication the lien laws cut off any other form of recovery not enunciated by statute. This all or nothing approach runs contrary to the purpose of providing security for the suppliers of work and materials through the mechanic lien laws. If the mechanic's lien is intended as the sole remedy, and if noncompliance therein defeats any other rights at law or equity, let the legislature say so. It should not be for the courts to say that the law of implied contract or recovery for unjust enrichment does not exist where the claimant did not present his right to a lien on real estate. To do so, within the facts here and at the stage of this case, would

result in the possibility of the landowner getting a substantial amount of rock for nothing. This result would allow the lien law in Chapter 429 to thwart rather than help mechanics and materialmen as the law intended. *Cf. R.L. Sweet Lumber Company v. Lane*, 513 S.W.2d 365, 370–71 (Mo. banc 1974); *R.J. Stephens, v. Taylor-Morley-Simon, Inc.*, 628 S.W.2d 375–75 (Mo. App.1982).

*The Vanderlann v. Berry Construction Co.*, 119 Ill.App.2d 142, 255 N.E.2d 615 (1970) case relied upon by the majority is inapplicable. Illinois law, according to that opinion at page 617, does not allow, in the absence of an express contract, any contract theory recovery by a sub-contractor against an owner. *See also Hill Behan Lumber Company v. Marchese*, 1 Ill. App.3d 789, 275 N.E.2d 451, 453 (1971). Nowhere is there any authority or reason for a similar declaration of law in Missouri, that recovery in quantum meruit for unjust enrichment is precluded by the lien statutes. The one great variable which will protect the owner, the element of payment to the general contractor, will serve to defeat any equitable relief if the proponent cannot prove the owner has not paid for the work or materials.

*Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150 (1966), mentioned in the majority opinion, presents the most logical and just approach. There the Supreme Court of Tennessee held, "privity between the parties is no obstacle to recovery under quasi contract." (Citations omitted.) *Id.* 407 S.W.2d at 154. As noted in *Paschall's*, actions for quantum meruit are based on the idea of a party, "receiving a benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation...." *Id.* The court there concludes the most important requirement of quasi contract is that the enrichment to the defendant be unjust. The privity requirement, the court concludes, should not deter a sub-contractor supplying materials or labor from pursuing an action for unjust enrichment against a landowner. *Id.* 407 S.W.2d at 155. The

*Paschall's* court also emphasized, as should this court, recovery in quasi contract should not be afforded in every instance, but limited to certain factual situations, "decided according to the essential elements of quasi contract." *Id.* 407 S.W.2d at 155; *see also Christmas Lumber Company, Inc. v. Shell,* 574 S.W.2d 742, 843–44 (Tenn.App.1978) (reversed on other grounds).

Nothing in Chapter 429 limits personal recovery after failure of the lien method. This court has allowed a general contractor to maintain a personal action with attendant jurisdiction and obtain a personal judgment against a landowner, after failing to serve a required lien law notice. *Esser v. Fowler,* 638 S.W.2d 327 (Mo.App.1982). That opinion went on to say the failure to create a valid mechanic's lien did not extinguish the debt sought to be enforced by a personal judgment, noting the existence of the lien cannot be had without the underlying personal judgment. *Esser, supra,* page 329. The same rights to recovery have not been barred to sub-contractors.

The opportunity arose in *Rolla Lumber Company v. Evans,* 482 S.W.2d 519 (Mo.App.1972), for the court to declare that no cause of action existed by the supplier against the owner for improvements made by the tenant, as declared by the majority here. *See, Ward v. Nolde,* 168 S.W. 596 (Mo.1914). Instead of saying no cause of action existed in quantum meruit, the court states, 482 S.W.2d on page 522, "... plaintiff was not entitled to recover on the evidence presented." If no cause of action exists it is unnecessary to receive evidence. In *Williams v. Cass,* 372 S.W.2d 156, 160 (Mo.App.1963) the court does recognize the right of the supplier to obtain a personal judgment against the landowner if the lien had failed. Within the factual confines of this case the plaintiff should not have been dismissed at the pleading stage. There is nothing in Missouri law deterring the plaintiff from proceeding in quantum meruit. If its proof fails that question is reserved for another day.

II.

The majority recites the applicable elements a party must plead and prove to sustain a case for unjust enrichment. The crucial element in this case is whether the landowner has paid the general contractor. The principal Missouri case relied upon by the majority, *Rackers & Baclesse, Inc. v. Kinstler,* 497 S.W.2d 549, 554 (Mo.App. 1973), involved a direct appeal after trial in which there was evidence of payment to the contractor. In contrast, this case's only question is whether the petition should have been dismissed. At this stage of the case, the focus lies exclusively with whether the pleading states a claim for which relief can be granted, and not with evidence that may be presented. *Plato Reorganized School District No. R–5 of Texas, et al Counties v. Intercounty Electric Cooperative Association,* 425 S.W.2d 914, 915 (Mo.1968).

The standard of review for dismissal for failure to state a claim need not be repeated, but if the facts pleaded and the reasonable inferences to be drawn therefrom viewed most favorably from the plaintiff's standpoint show any ground upon which relief may be granted, the plaintiff has a right to proceed. *Laclede Gas Company v. Hampton Speedway Company,* 520 S.W.2d 625, 630 (Mo.App.1975). The quoted paragraph eleven of the petition here in question is subject to the reasonable inference and interpretation that the landowner has not paid the contractor for the material supplied and therefore would not be subjected to a double payment. In paragraph 8 of the petition Green Quarries alleges it filed a claim against the Anchor Estate in bankruptcy court. Without more, the inference is it got nothing. This is unlikely if $8,174.10 had been added to the bankruptcy estate because of the trustee's action against the landowners. If the plaintiff is allowed to proceed, the pivotal question, whether the landowner paid Anchor or its trustee, can be answered without too much difficulty. If the plaintiff chooses to treat the matter of payment as an affirmative defense and presents its evi-

dence at trial without showing the defendant had paid Anchor or its trustee, then it would be subject to a directed verdict. Whether the landowners paid the contractor or the trustee can be easily determined by discovery. A clear picture can then be presented for either a summary disposition of the matter, or for a sufficiently framed issue presented for a determination on the merits.

Since this matter is still in the pleading stage, and giving the plaintiff every favorable intendment, the case should be allowed to proceed. "Plaintiff's cause of action is imperfectly or perhaps defectively stated, but that is not a defect reached by a motion to dismiss." *Ingalls v. Neufeld,* 487 S.W.2d 52, 56 (Mo.App.1972). It cannot be said the plaintiff can prove no set of facts in support of its claim of unjust enrichment, and under modern pleading principles, should not be subject to dismissal. *Laclede, supra,* at 630.

When the majority states at page 6 of the slip opinion that the failure of a subcontractor to allege non-payment of the landowner to the general contractor constitutes a failure to state a claim for unjust enrichment, it cites Wisconsin, California and Iowa authority. A Missouri plaintiff should not suffer a non-suit for failure to comply with out-of-state pleading requirements.

If the deficiency in the petition had been so obvious as to contain no reference to the Quarry being paid, then the drastic remedy of dismissal would be in order. But aborting the suit because the petition fails to allege the defendant didn't pay the contractor or the bankruptcy estate seems unduly harsh. There will be no chance of a judgment resulting in a double payment in this case if the plaintiff fails in the required *proof.* The result of the majority opinion insures no chance of double payments but also insures the chance there has been no payment at all.

Shifting the emphasis from the technicality of the pleading to a disposition of the cause on the merits, *Hampton, supra,* 631, I would hold the sustaining of the motion to dismiss as error. The judgment should be reversed and remanded to allow the plaintiff to proceed.