PATRICK V. KOEPKE CONSTRUC-
TION, INC., Plaintiff–Respon-
dent,

v.

WOODSAGE CONSTRUCTION
COMPANY, Defendant,

and

Palcor Capital Investors, Inc., et
al., Defendants–Appellants.

No. 60161.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 17, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 23, 1992.

Application to Transfer Denied
Jan. 26, 1993.

Theodore D. Ponfil, James D. Bass, Clayton, for defendants-appellants.

William J. Travis, St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

Patrick V. Koepke Construction, Inc. (hereinafter "Koepke Construction") initiated this action in the trial court by filing a two count petition for a mechanic's lien and unjust enrichment following non-payment for site improvements Koepke Construction had made to property located in St. Louis County. Koepke Construction named as defendants all those persons with any interest in the property in question. The trial court found in favor of Koepke Construction on both counts. All defendants, except Woodsage Construction, Joseph E. Liebold, and Frank Stevens who were in default, appeal the judgment of the trial court. We affirm in part and reverse and remand in part.

Palcor Capital Investors, Inc. ("Palcor"), a real estate investment and acquisition company, owned a twenty-three acre tract located on Dietrich Road in west St. Louis County (the "Property"). Richard Paletta was the president and sole owner of Palcor. He hired Clayton Engineering sometime in 1986 to obtain appropriate zoning for a multi-family development known as Dietrich Village Apartments on the Property and to draft a preliminary set of plans for construction of the apartments. Palcor then transferred its title to the Property in September 1987 to Dietrich Road Associates, a Missouri joint venture and general partnership of Trent Realty Investors and Realty Venture I, Inc. Richard Paletta had joined up as an investor with the developer Bruce Michelson of the Michelson Organization in the creation of the Dietrich Road Associates in order to undertake the real estate project along Dietrich Road. The Michelson Organization, as the developer, owned Realty Venture. Richard Paletta owned Trent Realty.

In May 1988 Dietrich Road Associates decided not to develop the property because the financial market had taken a downturn. Dietrich Road Associates subsequently entered into a contract with Joseph E. Liebold through JEL Real Estate, a corporation affiliated with Liebold, on June 27, 1988, for the sale of the Property for 1.5 million dollars. Prior to the contract, Richard Paletta had introduced David Colvin of Clayton Engineering to Joseph Liebold in March or April 1988, informed Colvin that Liebold was going to purchase the property and told Colvin to cooperate fully with Liebold in continuing the design and work on the project.

Before the contract of sale for the Property between Joseph Liebold and Dietrich Road Associates closed, Liebold (apparently also doing business as Woodsage Construction) entered into a verbal agreement with Koepke Construction in August 1988 to do certain site improvements on the Property. Liebold told Clayton Engineering that Koepke Construction would do the grading on the project. That same month Clayton Engineering received a call from Koepke Construction requesting that Clayton Engineering stake the project so Koepke Construction could proceed with the grading. On August 31, 1988, Clayton Engineering sent its bill for "stake-out of cleaning and grading" of the Property site to Dietrich Road Associates, in care of Palcor to the attention of Rick Paletta. Dietrich Village Associates or Palcor later paid the bill.

In August and September 1988 Koepke Construction made site improvements, in-

cluding the removal of an abandoned sewage treatment plant. However, the real estate sale between Dietrich Road Associates and Liebold, scheduled to close on September 30, 1988, fell through. Liebold never bought the Property. Joseph Liebold also never paid Koepke Construction for its work on the property.

After the sales contract terminated, title to the Property reverted from Dietrich Road Associates to Palcor sometime in January or February 1989. Shortly thereafter, Palcor entered into a sales contract on February 6, 1989, to sell the Property for 1.3 million dollars to Krupp Cofer Development Limited Partnership. ("Krupp Cofer") In March 1989 the parties executed a warranty deed for the sale of the Property with Palcor as seller and Dietrich Krupp Cofer 2 Limited Partnership ("Dietrich–Krupp") listed as buyer. Richard Paletta attributed $31,650.00 of the Property's 1.3 million dollar sale price to site work. Nevertheless, Koepke Construction was never paid for its work on the Property. Koepke Construction later valued the cost of its improvements to the Property at over $77,000.00.

Koepke Construction then initiated this lawsuit to impose a mechanic's lien upon the Property. Count one of Koepke Construction's first amended petition sought judgment against Woodsage Construction and the enforcement of a mechanic's lien for $77,705.50 for labor, materials, and equipment for certain site improvements, including clearing, demolition and grading, made by Koepke Construction to the Property. Count two sought recovery for unjust enrichment for the same improvements against defendants Dietrich–Krupp, Dietrich Road Associates through its partners and joint venturers Trent Realty and Realty Venture, and Palcor.

Palcor, in turn, filed its two count petition for declaratory judgment and slander of title against Koepke Construction and a second contractor, Frank Stevens d/b/a Tree Transplanting. In its lengthy findings of fact and conclusions of law, the trial court found that Joseph Liebold and Woodsage Construction were in default. Frank Stevens, who never appeared, was also in default. The trial court entered judgment against Woodsage Construction and in favor of Koepke Construction on count one of Koepke Construction's petition for a mechanic's lien. The trial court granted Koepke Construction a mechanic's lien against the property and also determined the lien had priority over a deed of trust held by Krupp Cofer Development Limited Partnership, and Robert F. Flynn, its trustee. The trial court found in favor of Koepke Construction and against Palcor, Trent Realty and Realty Venture on count two of Koepke Construction's petition for unjust enrichment.[1] On Palcor's two count petition, the trial court declared the mechanic's lien of Koepke Construction to be valid and enforceable; discharged the mechanic's lien of Frank Stevens for failure to prosecute; and dismissed with prejudice Palcor's second count for slander of title. All defendants except Woodsage Construction, Joseph E. Liebold and Frank Stevens (who were in default) appeal the judgment of the trial court.

Appellants raise two issues on appeal. They assert that the judgment ordering enforcement of the mechanic's lien under count one of Koepke Construction's first amended petition should be reversed because the judgment had no substantial evidence to support it, is against the weight of the evidence, and erroneously declares and applies the law. Their second contention attacks the trial court's entry of judgment in favor of Koepke Construction for unjust enrichment under count two of Koepke Construction's first amended petition upon the same grounds.

---

1. Although Koepke Construction had named Dietrich–Krupp as a defendant, along with defendant Dietrich Road Associates through its partner and joint venturers Trent Realty and Realty Venture and Palcor in count two of Koepke Construction's first amended petition, the trial court's judgment on count two of

Koepke Construction's first amended petition made no express disposition of or reference to Dietrich–Krupp. However, the trial court expressly determined there was no just reason for delay and designated its judgment final for purposes of appeal pursuant to Rule 74.01(b).

We address each point in turn, keeping in mind the standard of review that in a bench-tried case we must sustain the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Brownstein v. Rhomberg–Haglin and Assoc.*, 824 S.W.2d 13, 15 (Mo. banc 1992). Of equal importance, we defer to the trial court's resolution of credibility, Rule 73.01(c)(2), and we consider only those facts and inferences favorable to the prevailing party. *Slay Warehousing Co. v. Leggett*, 762 S.W.2d 63, 64 (Mo.App.1988).

Appellants' first point targets two of the trial court's conclusions: (1) that appellants impliedly authorized and ratified Koepke Construction's work and made Joseph Liebold an agent of appellants with respect to the property and (2) that Koepke Construction, by virtue of its contract with Joseph Liebold, had a contract with the property owner sufficient to subject the property to a mechanic's lien. The statutory provision of Chapter 429.010, RSMo Cum.Supp.1991 governing mechanics' liens provides in pertinent part as follows:

Any person who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, ... *under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor*, upon complying with the provisions of sections 429.010 to 429.340, shall have for his work or labor done ... a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated ...

(Emphasis ours.)

We recognize the principle that the provisions of our mechanic's liens statutes, being remedial in nature, should be construed liberally to carry out their just and beneficent objects. *Hertel Electric Co. v. Gabriel*, 292 S.W.2d 95, 101 (Mo. App.1956). Nevertheless, a mechanic's lien is purely a creature of the statutes; the policy of liberal construction of the lien statutes does not relieve a claimant of the necessity of reasonable and substantial compliance with statutory requirements. *Id.* In an action to enforce a mechanic's lien, the burden is on the plaintiff to prove such compliance with essential statutory requirements. *Id.*

Under the terms of section 429.010, Koepke Construction would be entitled to a mechanic's lien on appellants' property if it established that the work it performed on the property under contract with Joseph Liebold was work furnished "under or by virtue of any contract with the owner or proprietor thereof *or his agent.*" The crux of appellants' first point is that Liebold was not the owner's agent to permit Koepke Construction's imposition of the mechanic's lien. Appellants argue that no substantial evidence supports the trial court's finding that Liebold was an agent of the owners with respect to the property.

Appellants do not dispute that Richard Paletta had knowledge of Koepke Construction's work on the property. Paletta himself admitted that someone from St. Louis County in late summer or early fall had called him about demolition work being done by Koepke Construction on the Property. Koepke Construction had, in fact, applied for a demolition permit for the Property listing "Palcor Capital" as owner on August 22, 1988. Around the same time, Bruce Michelson, Paletta's partner in the project, learned from an employee that someone had moved dirt on the property. Michelson in turn relayed that information to Paletta. When Paletta inquired of Liebold, he told Paletta he was removing the sewage treatment plant. Paletta told him to stop until they closed on their contract of sale for the Property.

What appellants vigorously dispute is whether this knowledge, coupled with other evidence, established that Joseph Liebold was the agent of the owner. Appellants highlight the evidence that no contract (written or oral) existed between Koepke and the owners of the Property; that Liebold was not authorized by the owner Dietrich Road Associates to do demolition or

grading work; that nothing in the sales contract between Dietrich Road Associates and Liebold required or permitted Liebold to make improvements; and that Clayton Engineering had been authorized only to provide Liebold with information. Koepke Construction responds by emphasizing evidence of Richard Paletta's authorization to Clayton Engineering to cooperate with Liebold prior to the closing of the sale on the Property, the owner's payment of Clayton Engineering's invoice for the staking which Clayton Engineering had performed on the Property prior to Koepke Construction's site work, and the owner's authorization to Liebold for development on the Property. For this last evidentiary proposition, Koepke Construction relies on its request for admission to Woodsage Construction (Joseph Liebold's construction firm) that it had contracted with Dietrich Road Associates for construction on the property.[2]

We believe the early Missouri case of *Ford v. Dixon,* 171 Mo.App. 275, 157 S.W. 99 (1913), controls our decision. In *Ford* the owner entered into a real estate contract with defendant Dixon to sell property to Dixon for $30,000.00 and to deliver to Dixon a deed upon payment in full of the purchase price. Dixon paid $100.00 toward the purchase price, agreed to make monthly payments on the remaining balance and took possession of the premises. Dixon made repairs to the house, including plumbing work done by plaintiff under an oral contract with Dixon. The plumber assumed Dixon was the owner of the property. Dixon failed to pay the full amount she owed the plumber. Dixon also defaulted on her installment loan to the owner, having made only the initial $100.00 payment. Dixon surrendered the premises to the owner who then sold the property to another. The plumber brought suit to enforce a mechanic's lien upon the building.

As in our case, there was evidence to the effect that the owner knew of the work at the time it was being done. 157 S.W. at 99.

It was also clear the owner had no written or oral contract directly with the plumber. The court also found there was no proof the owner had authorized Dixon to act as his agent in having the work done nor did his contract for sale of the property mention the subject of improvements or repairs. *Id.*

The court recognized the principle that where the owner of the fee enters into a contract of sale or lease which invests the vendee or lessee with the right to enter into the possession of the premises, and compels him to erect a building thereon or make improvements for the enhancement of the freehold estate, the agency of the vendee or lessee to subject the freehold to mechanic's liens will be implied. *Id.* at 99–100. However, in *Ford* the sale contract did not contain such a provision. The court in *Ford* concluded that the mere fact owner knew that his vendee was having the building altered and repaired could not be construed as conferring authority upon the vendee in law to bind the owner's estate in the land which, as stated, was the legal title. *Id.* at 100. The court in *Ford* analyzed the situation as follows:

Here the lienor is endeavoring to subject a part of the estate of the vendor, who all along retained the legal title, to a lien not founded on his express or implied contract, and which cannot even be said to have enhanced the value of his estate. The alterations and repairs appear to have been necessary for the purpose of adapting the building to the special use the vendee decided to make of it, and there is no proof that they increased the value of the freehold by a single dollar. Consequently the position of the plaintiff in its last analysis is that the estate of the vendor, of which the building was an integral part, may be subjected to a lien founded on a contract to which neither directly nor indirectly he was a party, and which cannot be said to have been of any benefit to him. We

**2.** Woodsage Construction defaulted and never answered Koepke Construction's requests for admission, either to admit or deny, so Koepke Construction deems the matter admitted. Appellants dispute the use of this evidence, an admission by default, against them and contend this admission is evidence only against the defaulting party Woodsage Construction, and not against them.

think the mechanic's lien law should not receive an interpretation that would carve out an estate for the benefit of lienors in excess of that enjoyed by the owner, with whom they contracted directly or indirectly.

*Id.* at 101. The court concluded that the estate covered by plaintiff's lien was bound by the estate Dixon had in the land and building. *Id.* Since that estate had no existence at the time plaintiff plumber commenced its action for a mechanic's lien, plaintiff had no legal remedy against the building. *Id.*

The facts before us are quite similar to those in *Ford.* The owners here had an executory contract for sale of the property with Liebold, the prospective vendee. Like the prospective vendee in *Ford,* Liebold had made an earnest money deposit and assumed possession of the realty; however, Liebold never consummated the sale with the owners. The contract for sale, as in *Ford,* did not require Liebold to make improvements to the realty. Like *Ford,* Liebold, and not the owners of the Property, hired Koepke Construction to make such improvements. Mr. Koepke, president of Koepke Construction, admitted the only person he dealt with in connection with the property was Joseph Liebold. Mr. Koepke's own testimony belies any finding that he believed Liebold to be the agent of the owners as demonstrated in the following excerpt:

Q: And from what you say you don't recall doing any searches or examination or investigation yourself to find out who the true owner was?

A: [Koepke] No, sir, I didn't need to. Joe [Liebold] paid me for other projects so that's what I was assuming was going to happen with this project.

Q: I take it from what you say, as far as you were concerned you were dealing with Mr. Liebold, and his company, and that was good enough for you?

A: Yes, sir.

His deposition testimony read into the record at trial is also enlightening:

Question: You say you had never heard of Dietrich Road Associates, so I take it that Mr. Liebold never told you that he was working for Dietrich Road Associates?

Answer [Koepke]: No. I wish he was working for somebody.

Question: Did he ever tell you that the owner of the property had given him the authority to bring people on to the property and begin work prior to the time that he actually acquired the property?

Answer: I never heard that statement, no.

Question: I take it that he never told you that Dietrich Road Associates had given him authority to bring people on to the property?

Answer: No.

Question: In fact, you hadn't heard of Dietrich Road Associates at that point in time?

Answer: No. I mean, Joe [Liebold] told me to do something, his word was good, he paid me, paid me in the past, so I was looking for the same situation. It didn't happen.

Thus, like the plumber in *Ford,* Mr. Koepke had no contact with the actual owners. Despite evidence that Richard Paletta learned of Koepke Construction's work on the Property, his knowledge of the improvements by Koepke Construction does not establish that the owners authorized the work by Koepke Construction. *Accord, Ford.* We hold the evidence was too insubstantial to support a finding that Liebold was an agent of the owners to subject their Property to a mechanic's lien in Koepke Construction's behalf. Accordingly, the judgment of the trial court with respect to the first count is reversed.

■ In their second point, appellants dispute the trial court's entry of judgment against appellants Palcor, Trent Realty and Realty Venture on count two of Koepke Construction's petition for unjust enrichment. Appellants acknowledge their understanding of the doctrine of unjust enrichment as set out in *Green Quarries, Inc. v. Raasch,* 676 S.W.2d 261 (Mo.App. 1984):

Courts generally recognize that the essential elements of quasi contract or con-

tract implied in law are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable. The most significant requirement is that the enrichment to the defendant be unjust,.... that retention of the benefit be inequitable. *Id.* at 264. Appellants argue that Koepke Construction's proof fell far short of establishing any of these required elements. They state the claim for unjust enrichment should fail for four reasons: 1) appellants received no benefit from Koepke Construction's work; 2) appellants' acceptance and retention of any benefits from Koepke Construction's work were not under circumstances which would make retention inequitable; 3) appellants in no way accepted Koepke Construction's work; and 4) appellants in no way conducted themselves (or behaved unjustly) in order to influence Koepke Construction to provide its services.

The trial court specifically found that the Property had a higher value after Koepke Construction made improvements to the Property. The court held that the value of the Property "was unquestionably increased by the labor and materials supplied by Koepke", and determined "that the contract price and reasonable value of Koepke's work are $77,705.50, and that Koepke's work was incorporated into the improvements on the Property." The trial court further observed that when Paletta, as president of Palcor, later sold the property, he attributed $31,650.00 of the $1.3 million value of the Property to "site improvement costs." The trial court concluded that "it would be inequitable to permit Palcor to realize $1.3 million from the sale of the improved Property without having to pay for Koepke's work."

We agree. The judgment against Palcor, Trent Realty and Realty Venture based upon unjust enrichment was proper. The evidence is undisputed that Palcor attributed a portion of its sale price to site improvements when Palcor sold the Property to Dietrich–Krupp. These site improvement costs were, in essence, those improvements made to the Property by Koepke Construction. Clearly, appellants received a benefit from Koepke Construction's work. This same evidence shows that the owners "appreciated such benefit" within the meaning of *Green Quarries, Inc.*

■ Finally, we hold that, under the circumstances of this case, the evidence reflects the owners' acceptance and retention of the benefit of the improvements under circumstances in which retention without payment would be unjust. Here, although we have previously said the owners' knowledge of the improvements did not establish that owners had made Liebold their agent within the scope of Section 429.010 to permit the imposition of a mechanic's lien, such knowledge along with their payment of the expense to stake the property prior to the site improvements constitutes acceptance of the benefit of the site improvements. Their retention of the benefit is again demonstrated by Palcor's recognition of the site improvements in the sale of the Property. Unjust enrichment occurs when a person retains and enjoys the benefit conferred upon him without paying its reasonable value. *Green Quarries, Inc.*, 676 S.W.2d at 264. The trial court properly determined that Koepke Construction was entitled under Count II to recover under a theory of unjust enrichment; however, the trial court erred in the amount it awarded to Koepke Construction under Count II.

■ Recovery in an action of unjust enrichment depends upon whether, by the receipt of the expenditure in controversy the defendant was enriched at the loss and expense of plaintiff. 66 Am.Jur.2d Restitution and Implied Contracts § 3 n. 33 (1973) (*citing Straube v. Bowling Green Gas Co.,* 360 Mo. 132, 227 S.W.2d 666 (1950)). As the essence of unjust enrichment lies in the fact that the defendant has received a benefit which it would be inequitable for him to retain, it necessarily follows that the measure of recovery in a quasi-contractual action is not the actual amount of the enrichment, but the amount of the enrich-

ment which, as between the two parties, would be unjust for one party to retain. *See* 66 Am.Jur.2d *Restitution and Implied Contracts* § 4 n. 47 (1973). Under the principle that one who is unjustly enriched at the expense of another is required to make restitution, the intentions of the parties have little or no influence on the proper measure of damages. In the absence of fraud or other tortious conduct on the part of the party enriched, restitution is properly limited to the value of the benefit received. *Id.* at § 166 n. 82. These damages are distinguishable, on the other hand, from an action in *quantum meruit* in which the measure of recovery "is the reasonable value of the goods or services furnished to the benefited defendant." *Id.*

Missouri courts have tended to blur any distinction between unjust enrichment and *quantum meruit*.[3] The same appears true of the trial court's action here. The trial court determined that Koepke Construction should recover $77,705.50, an amount that Koepke had testified represented the reasonable value of his improvement to the property based upon what other contractors in the St. Louis area would charge for the same work. Koepke was entitled to place a value upon his own services, *Donovan v. Roth*, 700 S.W.2d 140, 144 (Mo.App.1985), without the necessity of other expert testimony. By focusing on the value of the labor and materials provided by Koepke Construction to defendant, the trial court appears to have based the measure of damages upon *quantum meruit* rather than unjust enrichment.

Unjust enrichment permits restitution based upon the value of the benefit received. While evidence of the costs of Koepke Construction's improvements were not irrelevant, the court should focus on the benefit received by defendant. If the value of what was received and what was lost were always equal, there would be no problem with the trial court's award of $77,705.50 to Koepke Construction. But, in fact, the evidence here suggests that plaintiff Koepke Construction has lost more than defendant has gained. By Richard Paletta's own admission, only $31,650.00 was attributed to the site improvements made by Koepke Construction at the subsequent sale of the Property. Thus, to the extent such amount represented a benefit to defendant, the award of at least $31,650.00 is proper. However, Koepke had also testified that 90% of Koepke Construction's work was utilized in the final development, although he acknowledged the final site improvements were completed according to different engineering plans than he had utilized. Thus, the record is unclear whether the trial court properly determined that the reasonable value of Koepke Construction's work reflects the benefit actually conferred. For that reason we must remand to the trial court for reconsideration of the amount of the damages previously awarded to Koepke Construction under Count II.

The judgment is reversed on Count I and affirmed in part and reversed in part and remanded on Count II.

PUDLOWSKI, P.J., and CRIST, J., concur.

---

**3.** For example, in *Anderson v. Caldwell*, 242 Mo. 201, 146 S.W. 444 (1912), plaintiff brought a suit in *quantum meruit* to recover the value of materials and labor furnished defendants in the construction of buildings for the 1904 St. Louis World's Fair. The court first broadly observed that, in a *quantum meruit* action "defendant should respond to the extent of the benefit received." *Id.* 146 S.W. at 446. But the court later defined the measure of recovery as the "reasonable value of such work and labor done." *Id.* Elsewhere, in *International Paper* *Co. v. Futhey*, 788 S.W.2d 303 (Mo.App.1990), plaintiff subcontractor brought a *quantum meruit* claim to recover the value of building materials it supplied to a general contractor for the construction of defendants' home. Our court recognized that *quantum meruit* "is a remedy for the enforcement of a quasi-contractual obligation and is based on the principle of unjust enrichment." *Id.* at 306. We noted that the "question of unjust enrichment focuses not upon what the contractor has received but rather what the owner has paid." *Id.*