28 | 385
95 | 458

## HENRY *vs.* JONES.

[TRESPASS QUARE CLAUSUM FREGIT TO RECOVER DAMAGES FOR PULLING DOWN GATE AND ERECTING FENCE ON PLAINTIFF'S LAND.]

1. *Right to repair partition fence.*—Where there is a partition fence between two adjacent land proprietors, or a fence which, although built entirely on the land of one, is recognized by both as a partition fence, each one has a right to enter on the land of the other for the purpose of repairing it.
2. *Estoppel in pais.*—The recognition by the parties, as a partition fence, of a structure which is built entirely on the land of one proprietor, operates as an estoppel *in pais*, and prevents either from complaining of any act done by the other which would have been lawful if the fence had been on the division line.
3. *Right to repair gives no right to destroy.*—If a gate, erected on the land of one proprietor, is also recognized as a part of the partition fence between him and the adjacent proprietor, the right to repair it as a fence does not authorize its destruction as a gate ; and an entry for the latter purpose is not protected by the statute.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. JOHN GILL SHORTER.

This action was brought by John B. Henry against Samuel Jones, in September, 1852, to recover damages for the defendant's wrongful act in entering on plaintiff's land, pulling down a gate, and erecting a fence thereon, thus obstructing plaintiff's right of way. The only plea was the general issue, with leave to give any special matter in evidence.

"On the trial," as the bill of exceptions states, "it was proved that the plaintiff, early in the year 1850, became the owner in fee of the lands described in his declaration, and has ever since owned, used, and possessed them as his plantation; that he thus became the owner of said lands by purchase from one Beard; that the defendant, early in the year 1851, by purchase and conveyance from one Fraley, became the possessor and owner in fee of a section of land adjoining plaintiff's said lands; that defendant, whilst he was on a treaty with said Fraley for his land, promised plaintiff that, if he succeeded in buying the land from Fraley, he would let plaintiff have forty acres of it, at a price to be afterwards agreed on, if it did not conflict with his interest; that after defendant had made said purchase from Fraley, and early in 1851, he and plaintiff tried to agree upon and designate the forty acres which defendant had so promised to let plaintiff have, but had not agreed; that plaintiff thereupon told defendant, that all he wanted said forty acres for was to procure a right of way for himself, his family and vehicles, from his dwelling-house to his said plantation, over and through the land bought by defendant from said Fraley; that defendant thereupon told plaintiff, that, if that was all he wanted, he should have a right of way through said land, if he would erect and keep up a good gate at the place where such road would pass through and intersect the fence which separated the cultivated land of plaintiff from the cultivated land of defendant, and would keep said gate closed or fastened; that plaintiff accepted this offer, and thereupon both parties agreed to it; that this agreement was verbal, and no writing was ever executed between the parties; that defendant's said land was situated between plaintiff's dwelling-house and his said plantation; that the distance from his dwelling-house to his said plantation, by the road so agreed on, was about a mile, and without this road, some three or four miles; that plaintiff,

immediately after said agreement, built a bridge over a creek running through defendant's said land; and also erected a gate at the place where the road so agreed on intersected and passed through the fence which separated the cultivated lands of the plaintiff and defendant; that said gate was hung on hinges, on a large post prepared and imbedded for the purpose; that said gate and post were erected entirely by plaintiff, and were entirely on his said plantation, (being the land described in his declaration,) but only a few feet from the line which divided his plantation from the defendant's said land; that the fence which separated their cultivated lands was built, before either of their said purchases, and some five or six years ago, by said Fraley, with the assent of said Beard, and upon the line as run by a county surveyor; that a considerable (if not the greater) part of said fence was in fact on the line, but the panels of the fence immediately adjoining said gate, as well as said gate and post, were entirely on plaintiff's land described in his declaration; that said road was opened in 1851, as soon as said gate was erected, and said bridge built; that it was used in 1851, and until May, 1852, when said bridge was washed away by a large freshet; that plaintiff, soon after said bridge was washed away, commenced getting timbers to rebuild it, whereupon defendant, early in June, entered upon plaintiff's said land, took down said gate, and built a fence in its place across said road, uniting the fence as it was before the erection of the gate by the plaintiff; that defendant, a few days afterwards, admitted to witness, who was a brother in the church, that he had done this, and that in so doing he had done wrong; that defendant stated, in this same conversation, that he had agreed to let plaintiff have the road on condition that he would put up a good gate and keep it closed, and that plaintiff had failed to comply with this condition. There was evidence, also, tending to show that, at several times before said gate was taken down by defendant, it was in bad order, and insufficient to keep stock out of defendant's field, if there was any stock in plaintiff's field; that in 1851 some stock had got out of plaintiff's field into defendant's field; that the outside fence of plaintiff's field was in bad

order; and that defendant's crop had thereby been slightly injured.

"This being all the evidence in the cause, the court charged the jury, that if the gate and fence in controversy divided the cultivated lands of the plaintiff from the defendant, it was a partition fence; that if it was a partition fence, either plaintiff or defendant might lawfully repair it, if it needed repair; and that if such partition gate or fencing was out of repair, and insecure for the protection of the defendant's plantation, and if it was necessary for the repair to remove the gate, and to connect the panels of the fence by rails, and the defendant did remove the gate for that purpose, and connect the panels of the fence by rails, he was not guilty of a trespass.

"The plaintiff excepted to this charge, and asked the court to instruct the jury, that if the gate was erected by the plaintiff on his own land, and the defendant entered upon the plaintiff's said land, without the plaintiff's consent, and took down the gate,—then defendant was guilty of a trespass; and that, although the gate and fence might be a partition fence, and needed repair, yet, if it was not necessary in effecting the repair to remove the gate, or if defendant did not remove it for that purpose, he would be guilty of a trespass. This charge the court gave, but further charged the jury, that if the gate and fence formed a partition fence, and was so used and recognized by both plaintiff and defendant, and was out of repair, and it was necessary in its repair to take down and remove the gate, and defendant took it down and removed it for that purpose, and repaired the fence,—he was not guilty of a trespass, although the gate was on plaintiff's land; and to this charge also the plaintiff excepted."

The charges of the court are now assigned as error.

JAMES E. BELSER, for the appellant.

JAMES L. PUGH, contra.

GOLDTHWAITE, C. J.—There can be no doubt, that, if a fence is a partition fence between two different owners, it confers the right on either to make the necessary repairs, and, as an incident to that right, gives authority to each to

Henry v. Jones.

enter on the land of the other for that purpose.. This was decided in Walker v. Watrous, 8 Ala. 493; and to that extent we recognize that case as authority.

So, also, if a part of the fence was entirely on the land of one of the proprietors, still, if it was recognized as a partition fence by both parties, it would confer the same rights as if it were in fact so. The recognition would operate as an estoppel *in pais;* and neither could complain of any act done by the other, which would have been lawful, had the fence been on the division line.

But the right to repair would not authorize one to destroy. Neither, in our opinion, would the right to repair a fence authorize the erection of an entirely different structure; and the statute (Clay's Digest, 241, § 4) would not authorize any entry on the lands of another, which was inconsistent with the rights that statute gives. In other words, if a gate was not only used as such, but recognized also as part of a division fence, the right to repair it in the one capacity, would not authorize its destruction in the other. Although either party could repair it as a fence, neither could destroy it as a gate; and if the entry was made for the latter purpose, the statute would afford no protection.

The charge of the court was directly in conflict with the principles we have expressed, as it instructed the jury, in effect, that the defendant below might destroy the structure as a gate, in order to repair it as a fence.

Judgment reversed, and cause remanded.

RICE, J., having been of counsel for the appellant, did not sit in this case.