Meyer v. Perkins.

HERMAN MEYER, APPELLANT, V. CHARLES PERKINS, APPELLEE.

FILED APRIL 8, 1911. No. 16,354.

Fences: DIVISION FENCES: ESTABLISHMENT BY AGREEMENT. An oral contract between the owners of coterminous tracts of real estate that a hedge fence theretofore planted by one of them practi-

cally upon the dividing line between their farms shall be a division fence, that one proprietor shall own the northern half thereof and shall care for and repair it and the other shall own, care for and repair the other half, after the agreement has been executed and observed for more than ten consecutive years, is binding upon the parties thereto and such of their successors in title as have notice thereof.

2. ———: ———: REMOVAL. After the hedge has been divided, neither proprietor has a right to remove his portion, except between the first day of December and the first day of the following April, and after having given the 60 days' notice provided for by section 10, art. II, ch. 2, Comp. St. 1889, unless he immediately replaces the hedge with some other lawful fence.

3. ———: ———: MAINTENANCE. In the event that a hedge thus divided shall have grown so as to interfere with the use of the adjoining land and the respective parties cannot agree concerning the trimming of the hedge, they should submit their differences to the fence viewers to make an order regarding the dimensions to which the hedge may be trimmed and maintained, and, when lawfully made, that order will bind the proprietors.

4. ———: ———: DESTRUCTION: INJUNCTION. A court of equity has authority to enjoin the unlawful destruction of a hedge fence.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Reversed.*

*O. B. Polk,* for appellant.

*George W. Berge, contra.*

ROOT, J.

This is an action to enjoin the defendant from trespassing on the plaintiff's land, and from cutting, destroying or removing any part of a hedge growing, as alleged, upon his premises and close to the boundary. The defendant prevailed, and the plaintiff appeals.

In 1879 John Chapman planted an Osage orange hedge for 160 rods along and but a few inches east of the western boundary of the land now owned by the plaintiff, and from that time made no claim to the

land west of his hedge. In 1889 Mr. ·Chapman's son-in-law, Perkins, the defendant herein, purchased the land immediately west of Mr. Chapman's land. In 1900 the plaintiff purchased the Chapman farm. The defendant four months after his purchase entered into an oral contract with Mr. Chapman, by the terms of which Perkins was to maintain the south 80 rods of the hedge and Chapman the northern 80 rods thereof. Both of these parties testify that Perkins from thenceforward cared for the southern half of the hedge, that it was their understanding that he became the owner thereof, and that the hedge at all times has been regarded as the dividing line between the respective farms. The testimony of these witnesses is not altogether satisfactory because given in part in response to leading questions, but, taking all of the testimony on this point and the evidence of the conduct of Chapman and Perkins, we conclude that an agreement was made for a division of the hedge fence, and that Chapman waived his right to compensation under the statute. The effect of this agreement and the conduct of the parties thereto for the 11 years intervening between that date and the time Chapman sold his farm to Meyer was to vest in Perkins title to the south half of the hedge burdened with all of the duties which the laws casts upon the owner of a part of a division fence. The plaintiff contends that the hedge is a part of his real estate, that no interest could or can be created therein, except by a writing sufficient to convey title to or an easement in the land, and that the contract between Perkins and Chapman does not bind the plaintiff because at the time of his purchase he had no notice that Chapman had incumbered the farm with an easement in Perkins' favor. At the time the hedge was planted, article II, ch. 2, Comp. St. 1889, was in force. Section 2, art. II, *supra,* provides that the owners of coterminous tracts of real estate shall each make and maintain a just proportion of a division fence, unless they or either of them elect to let their or his lands lie open. Section 3 provides: "When any per-

son shall have chosen to let his lands lie open, if he shall afterwards enclose the same, or if the owner of lands adjoining upon the enclosure of another, shall enclose the same upon the enclosure of another, he shall pay to the owner of the adjoining lands a just proportion of the value, at the time, of any division fence that shall have been made by such adjoining owner, or he shall immediately build his proportion of such division fence." The value of the fence and the amount one owner shall contribute, if not agreed to by the parties, is to be settled by fence viewers who are to be selected from the justices of the peace in the county.

Section 10, art. II, *supra,* provides that any person who shall have made his proportion of a division fence may remove the same between the 1st day of December and the 1st day of the following April by giving 60 days' written notice to the other party in interest. While the statute provides a procedure for ascertaining and fixing the rights and duties of coterminous proprietors with respect to a division fence, it is not exclusive, but they may by contract adjust their respective rights and obligations. The authorities are conflicting as to whether a contract of that character is within the statute of frauds. Respectable authorities hold to the contrary. *Guyer v. Stratton,* 29 Conn. 421; *Baynes v. Chastain,* 68 Ind. 376; *Ivins v. Ackerson,* 38 N. J. Law, 220; *Henry v. Jones,* 28 Ala. 385; *York v. Davis,* 11 N. H. 241; *Blood v. Spaulding,* 57 Vt. 422; *Walker v. McAfee,* 82 Kan. 182, 27 L. R. A. n. s. 226. Perkins by electing to use the hedge to enclose his field became liable to Chapman for one-half the value of that fence, and the fact that Chapman was willing to waive that compensation in consideration of their relations and of Perkins' agreement to maintain the south half of the hedge cannot concern a subsequent purchaser. Meyer knew at the time he purchased the farm that the hedge was and had been for years a division fence; he knew that Perkins became liable for contribution many years preceding the time Chapman transferred the farm;

he also knew, or should have known, that no award of compensation for Mr. Chapman and no report of a division of the fence had been filed in the office of the county clerk, and that therefore there probably was an existing contract, possibly in parol, between Chapman and Perkins with respect to that subject. The hedge must have attained such dimensions at the time of the plaintiff's purchase that he knew, or should have known, that it had been growing many years, so that, if Perkins' interest therein should be considered an easement in the Chapman farm, it was open and notorious, so as to put Meyer upon inquiry. *Arterburn v. Beard,* 86 Neb. 733. The plaintiff testified in substance that he did inquire of Mr. Chapman, and was told that the hedge all belonged to him, but no inquiry was made of Mr. Perkins. In the light of the facts in this case, it is immaterial whether the contract was oral or written. It has been executed and acted upon for more than ten years, and the situation and condition of the hedge gave ample notice of Mr. Perkins' rights. But, while the defendant acquired an interest in the hedge, he did not have a right to destroy or render it valueless for the purposes for which it was planted. Perkins, when restrained, had cut the hedge trees flush with the earth, or nearly so, for a space of 30 rods, and, until the sprouts shall grow and attain a considerable size, the hedge at this point will not perform its office as a division fence. We do not think the defendant should be thus permitted to work his will. If, as he argues, the hedge had grown so as to shade and render useless for agricultural purposes a strip of valuable land, and good husbandry dictates that the hedge should be trimmed and restrained within more narrow bounds than it now occupies, and he cannot agree with the plaintiff as to the extent of that trimming, we are of opinion that he should call upon the fence viewers to fix those limits. Section 29 of the original fence law (Rev. St. 1866, p. 10) provided: "Any structure or hedge, or ditch in the nature of a fence used for the purposes of en-

closure, which is such that good husbandmen generally keep, shall be deemed a lawful fence." The act of February 12, 1867 (Comp. St. 1889, ch. 2, art. II, sec. 18) describes a lawful fence, whether rail, board, rail and post, pole and post, or wire. This act deals with the dimensions of fences, including Osage orange hedge. The provision in subdivision 3 of said act that an Osage orange hedge "shall be such as the fence viewers shall decide a lawful fence" in our judgment vests the fence viewers with authority to adjust any differences that may arise between the owners of a division hedge fence, and to make an order concerning the limits within which it may be restrained so as to conform as nearly as may be to the artificial fences described in the statute. If Perkins preferred to substitute for his half of the hedge any other lawful fence, we are of opinion that he had the right to do so, but he does not contend that he intended to substitute a fence for the hedge, but pleads and testifies that cutting the hedge trees flush with the earth would improve the hedge. While this might be the fact if sufficient time were allowed for the hedge to grow, we do not think the plaintiff should be deprived of a fence during that period.

The defendant argues that the plaintiff should have appealed to the fence viewers, and not to the courts; but, in view of the fact that the defendant was rapidly destroying the hedge and did not propose to substitute a lawful fence, an order made by the fence viewers would come too late and would not furnish an adequate remedy. Equity will restrain the unlawful destruction of a hedge. *Sapp v. Roberts,* 18 Neb. 299.

We do not think that the plaintiff has any such an interest in the severed hedge trees as to entitle him to a judgment for their value, but if the defendant did not proceed in accordance with the fence law, or if he does not propose to immediately replace the hedge with a lawful fence, the plaintiff is entitled to a judgment restraining the further unlawful destruction of the hedge,

and, upon proper averments, for such damages as he may have suffered by the absence of a fence between the litigants' farms. There is no proof that the fence law was observed by the defendant, and a consideration of the entire record induces the belief that it was ignored by him. We do not care to make a finding to that effect, but shall permit the parties to make proof of the facts by granting a new trial. If it shall then appear that the fence law has not been observed by the defendant, or that he did not intend to immediately construct a lawful fence in place of the hedge, he should be enjoined from further unlawfully cutting down the hedge trees.

The judgment of the district court therefore is reversed and the cause is remanded for further proceedings.

REVERSED.

LETTON, J., not sitting.