HARLAN SCHNAKENBERG AND MERLEN SCHNAKENBERG, APPELLEES AND CROSS-APPELLANTS, V. KENNETH SCHROEDER, APPELLANT AND CROSS-APPELLEE.

367 N.W.2d 692

Filed May 3, 1985.   No. 84-219.

Kenneth Schroeder, pro se.

Frank J. Daley, Jr., of Germer, Koenig, Murray, Johnson & Daley, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

This case brings to light infrequently invoked statutes, as well as a dearth of decisions dictating disposition of the issue raised in the district court for Thayer County, and focuses on a division fence between agricultural tracts.

The two parcels involved in these proceedings are the northwest quarter of Section 23, Township 3 North, Range 4 West of the 6th P.M., and the east half of the southwest quarter of Section 23, Township 2 North, Range 3 West of the 6th P.M., in Thayer County, Nebraska. Harlan and Merlen Schnakenberg hold an equitable interest in a quarter section (northern tract) adjoining 80 acres which Kenneth Schroeder holds an interest in (southern tract). There is no recorded document regarding a division fence between the tracts.

Since 1927, the two tracts have been divided by an east-west division fence of four-strand barbed wire. When Schnakenbergs' grandfather acquired the northern tract in 1927, a "right-hand rule" apparently existed for maintenance of a division fence. Under such right-hand rule a landowner, standing on his tract while facing the division fence and the owner of the adjoining tract, placed his right hand on the division fence and was thereby obligated to maintain all the fence located at his right. Correspondingly, the rule required the adjoining landowner to maintain all the division fence located

at such owner's right. For some undisclosed but ultimately beneficial reason, Schnakenbergs' grandfather reversed the rule so that he, as owner of the northern tract, maintained the fence to the east (left) rather than to the west (right).

In 1954 Roy Getz acquired the northern tract, which he cultivated and never used as pasture for cattle. Schroeder acquired the southern tract in 1962 from one John Rossmiller and devoted the land to pasture for cattle. Neither Rossmiller nor Getz mentioned maintenance of a division fence to Schroeder.

Toward the west side of Schroeder's tract was a waterway or "water hole" running from north to south as a conduit for high water from a river. In 1963 a flood and accompanying debris demolished the division fence at the waterway. Because he had cattle on the southern tract, Schroeder replaced the four-wire fence, but high water repeatedly washed out the division fence. Schroeder felt that a one-strand electric fence would not collect and impede debris floating down the waterway in high water. Consequently, in 1964 Schroeder constructed an electric fence approximately 2 to 4 feet south of the division fence and has continuously restrained his cattle by such fence since its installation.

After installation of the electric fence, the four-strand wire fence had no function for Schroeder except a demarcation between the northern and southern tracts. Getz on occasion repaired the division fence at the waterway.

After their purchase of the northern tract from Getz in 1975, Schnakenbergs have used their tract to winter cattle. Schnakenbergs admit there has never been any agreement between Schroeder and them regarding a division fence. During May and July 1982, the division fence at the waterway was "pushed down by the weight of the flood and wood and debris" so that the division fence came in contact with Schroeder's electric fence, causing a short.

With his tractor Schroeder pushed the debris away from his electric fence. Later, Schnakenbergs, by written notice, demanded that Schroeder repair the four-strand fence. Schroeder refused. Schnakenbergs repaired the division fence at a cost of $170. Schroeder removed the repaired division

fence. Schnakenbergs replaced the division fence at a cost of $265 and brought suit against Schroeder.

In their petition Schnakenbergs alleged fear of Schroeder's prospective interference with the division fence and requested an injunction. Also, Schnakenbergs sought damages from Schroeder on account of repair and replacement of the division fence. For their cause of action to recover damages, Schnakenbergs relied on Neb. Rev. Stat. §§ 34-101 to 34-115 (Reissue 1984), relating to a division fence, and especially § 34-113.

The district court granted Schnakenbergs a temporary restraining order enjoining Schroeder's interference with the replaced division fence. The temporary restraining order was dissolved by the district court on the day of trial. As a result of the trial, the district court awarded damages of $435 to Schnakenbergs and ordered that Schroeder was "responsible for maintaining the West half of the fence" between the northern and southern tracts.

Schroeder has appealed and contends there was no agreement for maintenance of a division fence; §§ 34-101 to 34-115 are inapplicable as a basis for damages under the circumstances; and the order for fence maintenance is improper. Schnakenbergs have cross-appealed and complain that the district court should have required Schroeder to maintain the division fence for a specific distance, namely, westward from a point 660 feet west of the southeast corner of Schnakenbergs' tract.

"As at common law a land owner could not be compelled to build a partition fence, a party, therefore, by the erection of such fence acquires no right of action for contribution from the owner of lands adjoining." *Burr v. Hamer*, 12 Neb. 483, 487, 11 N.W. 741, 742-43 (1882).

Therefore, the Legislature enacted certain laws pertaining to division fences. See §§ 34-101 to 34-115.

When two or more persons shall have lands adjoining, each of them shall make and maintain a just proportion of the division fence between them; *Provided, however*, this shall not be construed to compel the erection and maintenance of a division fence where neither of the

adjoining landowners desires such division fence. Unless the owners of such lands adjoining shall have agreed otherwise, such fence shall be a lawful fence, as defined in section 34-115.

§ 34-102.

The value of such fence, and the proportion thereof to be paid by each adjoining landowner and the proportion of the division fence to be made and maintained by each adjoining landowner shall be determined by fence viewers as hereinafter provided for.

§ 34-104.

If disputes arise between the owners of adjoining lands concerning the proportion of fence to be made or maintained by either of them, such disputes shall be settled by fence viewers. In such case it shall be the duty of the fence viewers to distinctly mark and define the proportion of the fence to be made or maintained by each.

§ 34-105.

Section 34-106 prescribes the qualifications of and selection process for fence viewers. The powers of the fence viewers and the requirement of their written decision are described in §§ 34-107 to 34-109.

Whenever a division fence shall be injured or destroyed by fire, floods, or other casualty, the person bound to make and repair such fence, or any part thereof, shall make or repair the same, or his just proportion thereof, within ten days after he shall be thereto requested by any person interested therein, such requisition to be in writing and signed by the party making the same.

§ 34-112.

If such person shall neglect or refuse to make or repair his proportion of such fence for a period of ten days after such request, the party injured may make or repair the same at the expense of the party so refusing or neglecting, to be recovered with cost of suit.

§ 34-113.

Damages accruing to any person or persons under the provisions of sections 34-102 to 34-114 may be recovered in a civil action in any court of this state.

§ 34-114.

Because Schnakenbergs brought suit for equitable relief, we review this matter de novo on the record without reference to findings of fact made by the trial court. *Barry v. Wittmersehouse,* 212 Neb. 909, 327 N.W.2d 33 (1982); *Krafka v. Brase,* 218 Neb. 335, 353 N.W.2d 276 (1984).

Rights and duties regarding maintenance of a division fence are fixed either by agreement of parties as adjoining landowners or by statute. In *Meyer v. Perkins,* 89 Neb. 59, 62, 130 N.W. 986, 987 (1911), this court stated: "While the statute provides a procedure for ascertaining and fixing the rights and duties of coterminous proprietors with respect to a division fence, it is not exclusive, but they [coterminous proprietors] may by contract adjust their respective rights and obligations." *Meyer v. Perkins, supra,* informs us that an oral agreement regarding the maintenance and construction of a division fence executed and observed for more than 10 years is binding upon parties as well as their successors who have notice of such agreement for a division fence.

All the evidence in this case categorically negates any agreement entered by any owner of the northern tract and Schroeder regarding a division fence. Furthermore, the facts do not warrant an inference that Schroeder had notice of any agreement involving his predecessors and any division fence. During the 20 years Schroeder has owned the southern tract before suit by Schnakenbergs, no one, not even Schnakenbergs, mentioned a division fence agreement to Schroeder. During the 13 years when he was a contemporaneous adjoining landowner with Schroeder, Getz never requested that Schroeder repair the fence line, which had obviously fallen into some state of disrepair. In fact, Getz on occasion repaired the division fence at the waterway. Getz' conduct is inconsistent with any agreement imposing a maintenance duty on the owner of the southern tract. Schroeder's activity regarding the fences does not necessarily indicate his notice or adoption of a division fence agreement. Rather than being prompted by a duty to maintain a division fence, any work done by Schroeder on the division fence was motivated by a desire to avoid liability for damages caused by Schroeder's cattle on cultivated land north

of the fence. See Neb. Rev. Stat. § 54-401 (Reissue 1984) (owner's liability for damages caused by owner's cattle on cultivated land). "Under the statutes, as under the common law, the burden of restraining domestic animals is placed squarely upon the owner, and ordinarily no excuse for failure to restrain them is recognized." *Fiene v. Robertson*, 184 Neb. 668, 670, 171 N.W.2d 179, 181 (1969). Consequently, we conclude the conduct of Schroeder, as circumstantial evidence, does not warrant an inference that Schroeder had notice of an agreement for maintenance of the fence between the northern and southern tracts.

If the evidence has failed to establish an agreement by Schroeder or notice to Schroeder that predecessors had an agreement for the division fence, do the statutes pertaining to the division fence afford Schnakenbergs a remedy under the circumstances? The answer, in a word, is "No."

A dispute by adjoining landowners over a division fence "shall be settled by fence viewers." See § 34-105. In order to settle the dispute by adjoining landowners, the fence viewers must have determined the specific proportion or part of the division fence to be maintained by each adjoining landowner. See §§ 34-104 and 34-108. Without fence viewers' determination of what proportion of the division fence is the responsibility of which adjoining landowner, it is impossible to determine when an adjoining landowner has neglected or refused to "make or repair his proportion" of the division fence. See § 34-113. The obvious objective of the mentioned statutes is a method of allocating and assigning to adjoining landowners responsibility for maintaining specific parts of a division fence where there is no agreement for such maintenance. Because the statutory compensation for a fence viewer is $3 per day, one suspects there is not a multitude of anxious fence viewers waiting in the wings to spring into action. See § 34-110. Compulsory service as a fence viewer, even if not offensive to the constitutional prohibition against involuntary servitude, is not authorized by Nebraska statutes. Nevertheless, it is a fact of life in division fences—no fence viewers, no remedy in the absence of a division fence agreement. As we expressed in *Burr v. Hamer*, 12 Neb. 483, 487, 11 N.W. 741, 742

(1882):

> As the whole proceeding is statutory the mode of procedure therein provided must be followed. This requires the fence viewers, where the parties are unable to agree, to apportion to each the portion of fence to be made and maintained by him. When this is done, each party will own and have charge of a specific portion of the fence, and must keep the same in repair, and if he fail to do so the law provides a remedy.

Without a fence viewers' determination allocating to the adjoining landowners their respective proportions or parts of the division fence, the district court in this case had no jurisdiction to award damages for Schroeder's refusal or neglect concerning installation or maintenance of a division fence. For the same reason, that is, in the absence of a determination by fence viewers, the district court was without power to order Schroeder to maintain any part of the division fence. In the present case the district court trespassed into the realm of the fence viewer. The judgment of the district court in awarding damages and requiring Schroeder to maintain the fence is incorrect and is, therefore, reversed, and this matter is remanded to the district court with direction to dismiss Schnakenbergs' petition. On account of the disposition we have directed, we need not address Schnakenbergs' cross-appeal.

REVERSED AND REMANDED WITH DIRECTIONS.