Clarence DAILING and Peggy Dailing, Plaintiffs–Respondents,

v.

Robert L. HALL and Joan Hall, Defendants–Appellants.

No. 22169.

Missouri Court of Appeals, Southern District, Division One.

June 28, 1999.

Motion for Rehearing and Transfer to Supreme Court Denied July 19, 1999.

John Alpers, Jr., Cabool, for Appellants.

Scott B. Stinson, Mountain Grove, for Respondents.

JAMES K. PREWITT, Presiding Judge.

Defendants appeal from a judgment in favor of Plaintiffs for $3,642.00, representing one-half of the cost of a fence Plaintiffs constructed to replace a previous fence along or near the boundary line between the property owned by Plaintiffs and that owned by Defendants. Review of this non-jury case is governed by Rule 73.01(c). For interpretation of that rule, see *In re Marriage of Lafferty,* 788 S.W.2d 359, 361 (Mo.App.1990).

Plaintiffs and Defendants are adjoining landowners in Texas County, Missouri. Their properties are separated by a one-mile-long boundary fence which was built 35 to 40 years ago by Defendants' predecessor in title. Defendants have lived on their land since 1961, and Plaintiffs purchased their parcel in April, 1996. Until the purchase in 1996 by the Plaintiffs, the fence was maintained by the former owner of Plaintiffs' property and the Defendants together. Cattle had been kept on both parcels. The fence was originally constructed by Robert Jack James, Mr. Hall's uncle, and consisted of 36-inch woven wire topped by two strands of barbed wire. At the time of construction, the adjoining land was owned by "the government," and Robert Jack James bore the entire expense.

Soon after the purchase of their property, Plaintiff Clarence Dailing contacted Defendant Robert Hall to inquire about the possibility of installing a new fence along the boundary of the two properties. Clarence Dailing testified that Robert Hall said he would look at the old fence to see whether a new one was needed, but Hall never got around to it. Dailing testified that Defendants "[d]idn't want to build a fence at all."

On June 11, 1996, Defendants discovered that the old fence had been removed and a new fence had been constructed, using four strands of barbed wire and metal posts. Clarence Dailing testified, as did Peggy Dailing, that he provided Defendants with no written notice that he was removing the old fence. Further, Clarence Dailing was not sure he had verbally informed Defendants of his intended acts, and Peggy Dailing testified she was "[p]retty sure" her husband had informed Defendants he "was going to reconstruct the fence."

On June 17, 1996, Plaintiffs sent to Defendants a written demand for payment of $3,642.00, for one-half the cost of the new fence. Defendants refused to pay. Robert Hall testified he had told Clarence Dailing the amount he was requested to pay was "inflated so much that [he] wouldn't even consider it." Hall further

testified: "The labor bill on the fencing was over double what it's [sic] customary."

Plaintiffs, in their three-count Amended Petition, requested recovery from Defendants for one-half of the cost of construction of the new fence. Count I requested recovery under oral contract. Count II is denoted as an "action in quantum meruit," and Count III requested recovery under Sections 272.060 and 272.080, RSMo. With their Answer, Defendants filed a "cross petition" (counterclaim?) requesting damages against Plaintiffs for injury and destruction to trees, timber and plants during the construction of the fence. Count I of the Amended Petition was dismissed by Plaintiffs during the trial.[1]

The trial court dismissed Count III and ruled in favor of Plaintiffs on Count II of their Amended Petition, awarding $3,642.00 against Defendants. On Defendants' "cross petition," the trial court ruled in favor of Defendants, awarding damages in the amount of $750.00.

■ In Defendants' point which we find dispositive, they contend that the trial court erred in ruling against them because they neither requested that the fence be built, were never aware that it was being built, and never accepted any benefits of Plaintiffs' efforts in constructing the fence. Plaintiffs counter that whether Defendants requested or agreed to the fence construction is irrelevant, as they are liable due to a contract implied "in law."

■ As the court explained in *Green Quarries, Inc. v. Raasch,* 676 S.W.2d 261, 264(Mo.App.1984):

The doctrine of quasi-contract, also known as a contract implied in law, is based primarily on the principle of unjust enrichment. [Citations omitted.] Unlike a contract implied in fact, a contract implied in law is imposed, or created, without regard to the promise of the party to be bound. [Citations omitted.] The duty which engenders a quasi-contractual obligation is most often based upon the principle of unjust enrichment. [Citations omitted.] Unjust enrichment occurs where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust. [Citations omitted.] Thus, quantum meruit is a remedy for the enforcement of a quasi-contractual obligation. [Citations omitted.]

Courts generally recognize that the essential elements of quasi-contract or contract implied in law are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable. [Citation omitted.] The most significant requirement is that the enrichment to the defendant be unjust, [citations omitted] and that retention of the benefit be inequitable. [Citations omitted.][2]

Several authorities discuss the rights and obligations of adjoining landowners regarding fencing. In *McLean v. Berkabile,* 123 Mo.App. 647, 100 S.W. 1109, 1110 (1907), the court stated:

The common law of England required every man, at his peril, to keep his cattle on his own land, and, if they escaped and strayed to the land of another, the owner was liable in trespass for the damages inflicted. In this state, at a time in its early history when there was much unoccupied and uninclosed land, this rule was deemed by the Supreme Court

---

1. Clarence Dailing testified he had never claimed there was an oral contract between the parties and he had not seen the petition. Peggy Dailing also testified the parties never had an oral agreement.

2. "Missouri courts have tended to blur any distinction between unjust enrichment and *quantum meruit.*" *Koepke Constr., Inc. v. Woodsage Constr. Co.,* 844 S.W.2d 508, 516 (Mo.App.1992). For the purposes here, such distinctions need not be examined.

to be unsuited to the needs of a sparsely settled country, and in its construction of legislation relating to the subject the court held that domestic animals should be allowed to range at will over uninclosed lands, and compelled the owners of cultivated fields to fence against such animals, if they would escape their depredations. [Citations omitted.] But this exception to the common law rule does not apply to the lands of adjoining proprietors that are inclosed by continuous outside fences.... Under the statute ... either proprietor may compel the establishment and maintenance of a lawful fence, and provision is made for the division of such fence between the parties for the purpose of repairs, and it has been held that a division fence may be brought under the terms of the statute by the agreement of the parties on the obviously correct principle that a proprietor may do by voluntary agreement that which his neighbor may compel him to do by law. [Citations omitted.]

*Growney v. Wabash Ry. Co.*, 102 Mo. App. 442, 76 S.W. 671, 672(1903), also discusses the common law on fencing by adjoining landowners and the effect of Missouri statutes regarding such fences. It states:

By the common law, every man was bound to keep his cattle on his own lands. No man was bound to fence his field against an adjoining one. Every man was bound to keep his cattle in his own field at his peril. It – the common law – regulates the relations of parties in cases of adjoining fields which are within a common inclosure. If parties desire to avoid the common law in cases of adjoining fields, they may do so by establishing a dividing fence, either under the statute or by agreement, and when this is done the obligation to keep their cattle on their own land ends.

■ "A landowner has a right, as a general rule, to build a partition fence on the common boundary of adjoining lands.

However, apart from rights and duties which may arise from prescription, agreement, or statute, a landowner is under no obligation to build, maintain, or contribute toward a partition fence." 36A C.J.S., *Fences* § 5 (1961).

The question is whether an adjoining landowner may force his neighbor to pay one-half of the cost of a fence between their properties in the absence of either an agreement or proceeding under statutory fencing provisions as contained in Chapter 272, RSMo 1994. We emphasize that there is no proceeding here under those statutes, as Plaintiffs' count regarding the fencing statutes was ruled adverse to Plaintiffs and they did not appeal.

The trial court determined that Plaintiffs could not proceed under the statutes in Chapter 272. Plaintiffs contend, however, that the fencing benefited Defendants in the manner recognized by the legislature when it enacted the fencing statutes in Chapter 272. Nevertheless, we find no express conferrence of a benefit regarding fencing, at least where, as here, the statutes were not applicable or complied with.

In *Schnakenberg v. Schroeder*, 219 Neb. 813, 367 N.W.2d 692 (1985), the court determined that absent compliance with fencing statutes, and where there was no agreement between the owners, a person building a fence has no right to recover a portion of its cost from an adjoining owner. The syllabus prepared by the court, at 693, states:

1. **Property: Boundaries.** At common law a landowner could not be compelled to build a partition fence. A party, therefore, by the erection of such fence, acquires no right of action for contribution from the owner of lands adjoining.

2. **Property: Boundaries.** While Neb.Rev.Stat. §§ 34–101 to 34–115 (Reissue 1984) provide a procedure for ascertaining and fixing the rights and duties of coterminous proprietors with respect to a division fence, such statutes

are not exclusive, but coterminous proprietors may by contract adjust their respective rights and obligations regarding a division fence.

**3. Property: Boundaries.** Neb. Rev.Stat. §§ 34–101 to 34–115 (Reissue 1984) provide a method of allocating and assigning to adjoining landowners responsibility for maintaining specific parts of a division fence where there is no agreement for such maintenance.

Consistent with this holding is *Knapp v. Daily,* 96 Or.App. 327, 772 P.2d 1363 (1989), and the following from John H. Calvert, Comment, *Fencing Laws in Missouri – Restraining Animals,* 32 Mo. L.Rev. 519, 522 (1967):

> 2. Fencing Obligations Between Adjoining Landowners
>
> In the absence of prescription or agreement, ad[j]oining owners of land have no obligation under the common law to erect and maintain a fence on their common boundary line. [Footnote omitted.] The animal possessor's duty is to restrain his stock. Whether he does so by placing them within a fenced area or within a barn is immaterial. [Footnote omitted.] It is his prerogative to choose the method and not his neighbor's. Accordingly, a farmer owning fifty head of cattle can not compel his neighbor, who only possesses ten head, or none, to contribute towards the cost and maintenance of a partition fence.

We conclude that there can be no contract implied in law to pay for a claimed benefit contrary to the common law and either not covered by fencing statutes or the failure to comply with same. If the fencing statutes do not apply in this case, as the trial court apparently found, then there should be no obligation through a benefit based upon them when such an obligation has no common law basis. The fencing statutes amended or changed the common law when they apply, but we cannot conclude that the legislature intended to confer any right of action except when the statutes apply and upon compliance with them by the party seeking the benefit of the statutes.

The portion of the judgment granting damages to Plaintiffs is reversed and the cause remanded to the trial court for it to amend such judgment to deny Plaintiffs any relief upon their petition; in all other respects, the judgment is affirmed.

CROW, J., and PARRISH, J., concur.